# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CRUDE OIL COMMODITY FUTURES LITIGATION | MASTER FILE NO. 11 Civ. 3600 (WHP) |
| This Document Relates To: | |
| ALL ACTIONS | |

## MAJORITY PLAINTIFFS' APPLICATION FOR
## APPOINTMENT OF INTERIM CLASS COUNSEL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

BACKGROUND ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    Each Of The Mandatory Factors Of Rule 23(g) Militates In Favor Of The
Appointment of Lovell Stewart, Labaton Sucharow, Hausfeld, And Susman Godfrey
As Interim Class Counsel........................................................................... 2

    A.    Counsel's Experience In Handling Class Actions, Other Complex Litigation,
and The Types of Claims Asserted In The Consolidated Action..................... 3

        1.    Lovell Stewart........................................................................... 3

        2.    Labaton Sucharow ................................................................... 8

        3.    Hausfeld ................................................................................. 11

        4.    Susman Godfrey..................................................................... 15

    B.    Counsel's Work In Identifying Or Investigating The Claims....................... 17

        1.    Lovell Stewart......................................................................... 17

        2.    Labaton Sucharow ................................................................. 18

        3.    Hausfeld ................................................................................. 19

        4.    Susman Godfrey..................................................................... 19

    C.    Rule 23(g)(1)(A)(iii):  Lovell Stewart, Labaton Sucharow, Hausfeld, And
Susman Godfrey Possess The Requisite Knowledge Of Commodity Futures
Manipulation, Antitrust And Class Action Law ......................................... 20

    D.    Rule 23(g)(1)(A)(iv):  Lovell Stewart, Labaton Sucharow Hausfeld, And
Susman Godfrey Will Commit More Than Ample Resources To Representing
The Classes 20

        1.    Lovell Stewart......................................................................... 20

        2.    Labaton Sucharow ................................................................. 21

        3.    Hausfeld ................................................................................. 22

        4.    Susman Godfrey..................................................................... 22

II.   Discretionary Factors Favor Granting The Majority Plaintiffs' Motion.............................. 23

    A.   The Court Should Grant The Motion Because It Is Supported By More Than
       Two-Thirds Of The Related Actions ......................................................................... 23

    B.   The Issues In This Case Warrant The Appointment Of A Multiple Firm
       Leadership Structure .................................................................................................. 24

CONCLUSION.................................................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air Cargo Shipping Services Antitrust Litigation,*
     240 F.R.D. 56 ..................................................................................................24

*In re Amaranth Natural Gas Commodities Litigation,*
     269 F.R.D. 366 (S.D.N.Y 2010) ....................................................................4

*In re Amaranth Natural Gas Commodities Litigation,*
     711 F.Supp.2d 301 (S.D.N.Y. 2010)........................................................7, 21

*Billing v. Credit Suisse First Boston Ltd.,*
     426 F.3d 130 ....................................................................................................6

*In re Dairy Farmers of America, Inc.,*
     767 F.Supp.2d 880 (N.D. Ill. 2011) ...............................................................7

*Goldschmidt v. Hunt,*
     556 F.Supp. 123 (N.D. Tex. 1983).................................................................4

*In re Initial Public Offering Antitrust Litigation,*
     287 F.Supp.2d 497 (S.D.N.Y. 2003).........................................................6, 21

*Kohen v. Pac. Investment Management Co. LLC,*
     244 F.R.D. 469 (N.D. Ill. 2007) .......................................................3, 4, 6, 21

*Leist v. Simplot,*
     638 F.2d 283 (2d Cir. 1980)............................................................................3

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,*
     56 U.S. 353 (1982)....................................................................................3, 4, 8

*Liang v. Hunt,*
     477 F.Supp. 891 (N.D. Ill. 1979) ...................................................................3

*In re NASDAQ Market-Makers Antitrust Litigation,*
     187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................5

*In re Natural Gas Commodities Litigation,*
     231 F.R.D. 171 (S.D.N.Y. 2005) ....................................................................4

*Starr v. Sony BMG Music Entertainment,*
    592 F.3d 314 (2d Cir. 2010)..................................................................7

*Stoller v. CFTC,*
    834 F.2d 262 ........................................................................................4

*Strobl v. New York Mercantile Exch.,*
    582 F.Supp. 770 (S.D.N.Y. 1984) ....................................................3, 4

*Simplot v. Strobl,*
    474 U.S. 1006......................................................................................3

*In re Sumitomo Copper Litigation,*
    74 F. Supp. 2d 393 (S.D.N.Y 1999)..........................................3, 6, 8, 20

*In re Sumitomo Copper Litigation,*
    182 F.R.D. 85 (S.D.N.Y 1998) ...........................................................4

*In re Sumitomo Copper Litigation,*
    194 F.R.D. 480 (S.D.N.Y. 2000) ........................................................4

## DOCKETED CASES

*In re Aftermarket Filters Antitrust Litigation,*
    MDL Docket No. 1957 .......................................................................16

*In re Air Cargo Shipping Services Antitrust Litigation,*
    No. 06-md-01775 (E.D.N.Y) .........................................9, 11, 12, 13, 24

*In re America Int. Group Sec. Litigation,*
    C.A. No. 04-cv-08141 (S.D.N.Y) ........................................................8

*In re Amaranth Natural Gas Commodities Litigation*
    No. 07 Civ. 6377 ..........................................................................10, 24

*In re Bear Stearns Co. Sec. Derivative ERISA Litigation,*
    No. 08 MDL 1963 (S.D.N.Y. Jan. 5, 2009) .........................................2

*In re Brand Name Prescription Drugs Antitrust Litigation,*
    No. 94 C 897 (N.D. Ill.) ....................................................................8

*In re BP Propane Indirect Purchaser Antitrust Litig.,*
    06-C-3541 (N.D. Ill. Oct. 17, 2006).....................................................6

*In re Buspirone Antitrust Litigation,*
    MDL No. 1413 (S.D.N.Y) ..................................................................11

*In re Commodity Exchange, Inc., Silver Futures & Options Trading Litig.,*
    1:11-md-02213-RPP (S.D.N.Y.) .................................................................................7, 10, 14

*In re Corrugated Container Antitrust Litigation,*
    MDL No. 310 .........................................................................................................................16

*In re Countrywide Finance Corp. Sec. Litigation,*
    C.A. No. 07-cv-05295 .............................................................................................................8

*In re Crude Oil Commodity Litigation,*
    No. 06-cv-6677 .....................................................................................................................11

*In re Energy Transfer Partners Natural Gas Litig.,*
    4:07-cv-03349 (S.D. Tex.) (Nov. 26, 2007).........................................................................11

*Four In One Co., Inc. v. SK Foods, LP,*
    No. 08-cv-03017 (E.D. Ca. Mar. 20, 2009) .........................................................................13

*In re Intel Corp. Microprocessor Antitrust Litig.,*
    MDL No. 05-1717, (D. Del. Apr.18, 2006) ..........................................................................23

*In re International Air Transportation Surcharge Antitrust Litigation, Case*
    No. M:06-cv-01793-CRB, MDL No. 1793.............................................................................12

*In re Korean Air Lines Co., Ltd. Antitrust Litigation,*
    MDL Docket No. 1981 ...........................................................................................................16

*In re Marine Hose Antitrust Litigation,*
    No. 08-MDL-1888 ...................................................................................................................9

*In the Matter of Manning Stoller,*
CFTC 77-15, (C.F.T.C. Apr. 18, 1990) ....................................................................................4

*In re Municipal Derivatives Antitrust Litigation,*
    MDL Docket No. 1950 ...........................................................................................................16

*In re Natural Gas Commodity Litigation,*
    C.A. No. 03-cv-06186 ................................................................................................10, 14, 24

*National Metals Inc. v. Sumitomo Corp.,*
No. GIC 734001, (Cal. Super. Jan. 22, 2003)........................................................................11

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    No. MDL 1290 (D.D.C.)..........................................................................................................9

*In re Optiver Commodities Litigation,*
No. 08-cv-6842 ...........................................................................................7, 10

*In re Platinum & Palladium Commodities Litigation,*
No. 10-cv-03617 (S.D.N.Y. 2010)..................................................................7

*In re Processed Egg Products Antitrust Litigation,*
2:08-md-02002..............................................................................................16

*In re Puerto Rican Cabotage Antitrust Litigation,*
C.A. No. 08-cv-001467................................................................................9

*In re Rail Freight Fuel Surcharge Antitrust Litigation,*
No. 1:07-mc-00489-PLF-JMF, .................................................................24

*In re Real Estate Associates Limited Partnership Litig.,*
98-cv-07035 ................................................................................................11

*In re Rubber Chemicals Antitrust Litigation,*
No. C-03-1496 ............................................................................................12

*In re Soybeans Futures Litigation,*
89 Civ. 7009 (CRN) (N.D. Ill.) .............................................................6, 24

*In re Stock Exchanges Options Trading Antitrust Litigation,*
No. 99-cv-00962 ..........................................................................................9

*In re Sumitomo Copper Litig.,*
96 Civ. 4854 (S.D.N.Y. 1996) ..............................................................9, 24

*In the Matter of Harold Collins, et al.,* CFTC No. 77-15,
(CFTC Feb. 3, 1984).....................................................................................4

*In re Transpacific Passenger Air Transp. Antitrust Litig.,*
No. 07-cv-5634 ...........................................................................................13

*In re TriCor Indirect Purchaser Antitrust Litigation,*
No. 05-cv-00360 ..........................................................................................9

*In re Vitamins Antitrust Litigation,*
MDL No. 1285 ............................................................................................17

*In re Warfarin Sodium Antitrust Litigation,*
No. 98-md-01232 ..........................................................................................9

# FEDERAL STATUTES

Fed. R. Civ. P. 23(g) ............................................................................................. *passim*

Fed. R. Civ. P. 42 ..........................................................................................................2

Fed. R. Civ. P. 42(a) .....................................................................................................1

7 U.S.C. § 25 ...........................................................................................................4, 20

7 U.S.C. § 1 et seq. .......................................................................................................3

15 U.S.C. § 1 ...............................................................................................................20

15 U.S.C. § 2 ..........................................................................................................2, 20

7 U.S.C. § 13 ...............................................................................................................20

15 U.S.C. § 15 .............................................................................................................20

7 U.S.C. § 25(a) .............................................................................................................1

# ADDITIONAL SOURCES

Manuel for Complex Litigation (Fourth), § 21.11 ...................................................2, 23

Statement before the Sub-committee On Oversight And Investigations of The Committee
On Energy And Commerce, dated June 7, 1982 of Leonard Toboroff, Esq. .............................4

*Strobl,* Trial Tr., November 17, 1983, at 1253:4-5 .........................................................5

Seth Lubove and Elizabeth Stanton, *Pimco Power in Treasuries Prompts Suit,*
BLOOMBERG MARKETS, February 20, 2008 (Apr. 2008) .............................................6

Graham Bowley, *U.S. Suit Sees Manipulation of Oil Trades in 2008,* N.Y. TIMES, May
25, 2011 .................................................................................................................10

Pursuant to Pretrial Order No. 1, entered by the Court on July 22, 2011 [D.E. 17] and Federal Rule of Civil Procedure 23(g), the law firms of Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"), Labaton Sucharow LLP ("Labaton Sucharow"), Hausfeld LLP ("Hausfeld"), and Susman Godfrey LLP ("Susman Godfrey") respectfully submit this memorandum in support of their application to appoint Lovell Stewart as Chair, and Labaton Sucharow, Hausfeld and Susman Godfrey as members of an Executive Committee that will serve as interim class counsel ("EC"). This application is supported by plaintiffs in more than two-thirds (13 out of 18) of the related actions.[1] *See* proposed Pretrial Order No. 2 (which takes special care to prohibit any duplication of counsel's work or efforts).

## BACKGROUND

Following the filing in this Court of a civil complaint by the Commodity Futures Trading Commission ("CFTC"), the Majority Plaintiffs filed class actions alleging that Defendants Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, James T. Dryer, and Nicholas Wildgoose (collectively, "Defendants") unlawfully manipulated certain futures and related contract prices for West Texas Immediate crude oil ("WTI") traded on the New York Mercantile Exchange ("NYMEX") between December 1, 2007 and at least May 31, 2008 (the "Class Period"), in violation of Section 22(a)(1) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25(a)(1).[2]  Several complaints, including those filed by Labaton Sucharow and Hausfeld, also allege that Defendants' manipulation constituted the unlawful exercise of

---

[1] The following plaintiffs in the related actions pending before the Court support this application:  Stephen Ardizzone; Gregory Galan; AIS Futures Management, LLC; AIS Futures Fund II L.P. (2X-4X); AIS Futures Fund III L.P.; AIS Futures Fund IV L.P.; Adams Affiliates, Inc.; Todd Kramer; Cervino Capital Management LLC; John J. LoSordo, Jr.; DCM Energy LLC; Edward Bernstein; Joseph G. Loza; Lykins Company, Inc.; David Huemer; and Adam Harrington (collectively, the "Majority Plaintiffs").

[2] On May 29, 2011, Labaton Sucharow filed the first class action complaint in the country on behalf of Plaintiff Stephen E. Ardizzone.

monopoly power in the market for WTI Derivatives (as defined in those complaints) in violation

of Section 2 of the Sherman Act, 15 U.S.C. § 2.  In total, to date, eighteen related actions have

been filed against the same Defendants alleging virtually the same facts.

On July 11, 2011, the Court entered Pretrial Order No. 1 consolidating the related actions

before the Court pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and requiring

that all applications for appointment of Interim Class Counsel shall be served and filed on

August 11, 2011.

## ARGUMENT

I.     **Each Of The Mandatory Factors Of Rule 23(g) Militates In Favor Of The Appointment of Lovell Stewart, Labaton Sucharow, Hausfeld, And Susman Godfrey As Interim Class Counsel**

Rule 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of

a putative class before determining whether to certify the action as a class action." Fed. R. Civ.

P. 23(g)(3); see Manuel for Complex Litigation (Fourth), § 21.11 (2004) ("designation of interim

counsel clarifies responsibility for protecting the interests of the class during precertification

activities...").

Neither Rule 23(g) nor the accompanying Advisory Committee Notes explicitly state the

standards to be applied in choosing interim class counsel.  Courts have held that the same factors

that apply in choosing class counsel at the time of class certification apply in choosing interim

class counsel. *See In re Bear Stearns Co. Sec. Derivative ERISA Litig.*, No. 08 MDL 1963, 2009

WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009).

Under these standards, the Court is required to appoint interim class counsel who are

"best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).  In order to satisfy this

requirement, Rule 23(g) sets out four mandatory factors for a court to consider:  (i) the work

counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  As set forth below, each of the above factors supports granting the Majority Plaintiffs' application here.

### A.     Counsel's Experience In Handling Class Actions, Other Complex Litigation, and The Types of Claims Asserted In The Consolidated Action

#### 1.     Lovell Stewart

<u>CEA Manipulation.</u>  As Court-appointed counsel for classes alleging commodity futures manipulation, Lovell Stewart Halebian Jacobson LLP and its predecessors (the "Firm" or "Lovell Stewart") have obtained the largest[3], the second largest[4], and the third largest[5] recoveries in the history of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ("CEA").

Lovell Stewart also successfully tried the first action for manipulation under the amended CEA.[6]  It successfully briefed and argued the appeal to the United States Supreme Court that upheld this Circuit's recognition of a private right of action for manipulation under the CEA.[7]

---

[3] *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("*Sumitomo*") ("the largest class action recovery in the 75 plus year history of the" CEA).

[4] *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469 (N.D. Ill., 2007), *aff'd*, 571 F.3d 672 (Posner, J.), *cert. denied*, 130 S. Ct. 1504 (2010) ("*PIMCO*"). (Final Judgment and Order 05 C 4681, filed May 2, 2011 approving $118,750,000 settlement).

[5] *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 186 (S.D.N.Y. 2005) (*"Natural Gas"*) (certifying class) *petition for review denied*, August 1, 2006 (in other orders in this case, $100,800,000 in settlements were approved).

[6] *Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985), *cert. denied sub nom.*, *Simplot v. Strobl*, 474 U.S. 1006 (1985) (after the Department of Justice decided not to bring price-fixing claims under the federal antitrust laws and after the CFTC lost a trial seeking to prove attempted manipulation, the Firm tried and won all damages requested in a three week jury trial on claims for price-fixing and manipulation, and sustained the verdict against motions for *j.n.o.v.* and new trial, as well as on appeal).

[7] *Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980) (Friendly, J.) ("*Leist*"), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) ("*Curran*").  Originally, courts refused to recognize rights of action under the CEA for manipulation or under the antitrust laws for damages suffered in commodity futures.  *E.g., Liang v. Hunt*, 477 F. Supp. 891 (N.D. Ill. 1979) (denying any right of action under CEA or antitrust laws for soybeans class).  But the

The Firm subsequently prepared a statement and its partner testified before the Congressional Subcommittee considering what became the express private right of action under which the CEA manipulation claims here are brought, Section 22 of the CEA.  7 U.S.C. § 25.[8] And Lovell Stewart has successfully briefed and argued the first appeal and almost all of the attempted petitions for review of decisions certifying classes on commodity futures manipulation claims under Rule 23.[9]

Lovell Stewart respectfully submits that the Firm's foregoing successes result from and reflect the long experience that its attorneys have "with the types of claims asserted in this action", within the meaning of Fed. R. Civ. P. Rule 23(g)(1)(A)(ii). For example, during 1977-early 1980, Christopher Lovell successfully defended various CEA manipulation claims and, during late 1979- and early 1980, successfully tried one of the first charges of attempted manipulation brought by the CFTC.[10]  See Firm resume, Ex. A, attached as Exhibit A to the Declaration of Bernard Persky ("Persky Decl.") (describing that Firm's attorneys have over

---

Firm repeatedly and (ultimately) successfully contested these decisions. *E.g., Curran,* 456 U.S. 353, *supra; Strobl,* 768 F.2d at 23-24 (rejecting 7th circuit precedent and upholding antitrust claims in commodity futures markets); *Goldschmidt v. Hunt,* 556 F. Supp. 123 (N.D. Tex. 1983).

[8] *See* Statement before the Sub-committee On Oversight And Investigations of The Committee On Energy And Commerce, dated June 7, 1982 of Leonard Toboroff, Esq.  The CEA claims in this litigation are brought pursuant to Section 22 of the CEA.

[9] *PIMCO,* 571 F.3d 672 (7th Cir. 2009); *In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 92 (S.D.N.Y. 1998) ("*Sumitomo I*"); *In re Sumitomo Copper Litig.,* 194 F.R.D. 480 (S.D.N.Y. 2000), *appeal denied,* 262 F.3d 134 (2d Cir. 2001) ("*Sumitomo II*").  See also, *In re Amaranth Natural Gas Commodities Litig.,* 269 F.R.D. 366 (S.D.N.Y. 2010) (SAS), *petition for review denied,* 10-4110-mv (2d Cir. Dec. 30, 2010) ("*Amaranth*"); *Natural Gas,* 231 F.R.D. 171 (S.D.N.Y. 2005); Order denying petition for leave to file interlocutory appeal, 05-5732-cv (2d Cir. Aug. 1, 2006).

[10] *In the Matter of Harold Collins, et al.,* CFTC No. 77-15, 1984 WL 48079 (CFTC Feb. 3, 1984) (finding for Respondent on all charges), *rev'd in part,* CFTC No. 77-15, 1986 WL 66165 (CFTC Apr. 4, 1986), (finding for CFTC on one charge), *rev'd sub nom. Stoller v. CFTC,* 834 F.2d 262 (2d Cir. 1987) (reversing and dismissing remaining charge against Respondent); *see also In the Matter of Manning Stoller,* CFTC 77-15, 1990 WL 282910 (C.F.T.C. Apr. 18, 1990)(final order awarding attorneys' fees under the Equal Access To Justice Act in respect of charges as to which the reversal had been granted by the Second Circuit).

seventy-five years of experience with CEA manipulation claims).

**Antitrust.** Regarding antitrust claims in the exchange market context, Lovell Stewart

obtained, as Court-appointed co-lead counsel, what was then the largest class action settlement in

the history of federal antitrust laws, and still is the largest antitrust recovery in the exchange

market context. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 471 (S.D.N.Y.

1998) ("this all-cash settlement, achieved through 'four years of hard-fought litigation,'

apparently is [at that time] **the largest recovery (class action or otherwise) in the hundred

year history of the state and federal antitrust laws.**"). (emphasis added).

With respect to antitrust claims in the commodity futures markets specifically, the *Strobl*

trial (*see* n.6), as is true of the claims in this litigation, involved both CEA manipulation and

Sherman Antitrust Act claims.  At the successful conclusion of this trial, the Honorable Lloyd F.

MacMahon stated to the Firm's senior partner, Mr. Lovell, and Defendants' counsel, the late

Peter Fleming Esq.: **"You both tried a very difficult case very well."** *Strobl*, Trial Tr.,

November 17, 1983, at 1253:4-5. (emphasis added).

*Sumitomo* (n.3), also involved, as does this case, alleged wrongdoers who adversely

affected traders on different exchanges through anticompetitive actions in both the cash markets

and futures market.  The Honorable Milton Pollack appointed Lovell Stewart as sole lead

counsel for the class in *Sumitomo*, and later expressly found as follows:

> The **unprecedented effort** of Counsel exhibited in this case led to
> their successful settlement efforts and its vast results. Settlement
> posed a saga in and of itself and required enormous time, **skill and
> persistence.** Much of that phase of the case came within the direct
> knowledge and appreciation of the Court itself. Suffice it to say,
> the Plaintiffs' counsel did not have an easy path and their services
> in this regard are best measured in the enormous recoveries that
> were achieved under trying circumstances in the face of natural,
> virtually overwhelming, resistance. The negotiation of each
> settlement that was made was at arm's length and exhibited **skill**

> **and perseverance on the part of lead counsel** and an evident
> attempt to gain for the Class the optimum settlement figures that
> could be reached.

74 F. Supp. 2d at 396 (emphasis added).[11]

Further, *PIMCO* (n. 4) involved, as does this case, contentions that the defendants

operated anticompetitively to control supplies in the cash markets in order to manipulate prices.

In *PIMCO*, (n. 4 *supra*) the Honorable Ronald A. Guzman appointed Lovell Stewart as sole lead

counsel after a contested motion. *PIMCO*, 05 C 4681 (N.D. Ill.) (Dec. 6, 2005 Order) (D.E. 38).

BLOOMBERG MARKETS magazine reported during the course of the *PIMCO* litigation as follows:

> To classify Pacific Investment Management Co. [managed by co-founder Bill
> Gross] as a large mutual fund family does it little justice.  Its $747 billion in bond
> assets almost matches the gross domestic product of Australia.  **Pimco has found
> itself up against a formidable opponent in [Christopher] Lovell.  What [Bill]
> Gross is to the world of Bonds, [Christopher] Lovell is to commodities
> manipulation and price-fixing lawsuits.**

Seth Lubove and Elizabeth Stanton, *Pimco Power in Treasuries Prompts Suit*, BLOOMBERG

MARKETS, February 20, 2008 (Apr. 2008) (emphasis added).[12]

Also, Lovell Stewart was appointed as Chair of the Executive Committee by this Court

on price-fixing claims in another exchange market case.  *In re Initial Public Offering Antitrust*

*Litig.*, 287 F. Supp. 2d 497 (S.D.N.Y. Nov. 3, 2003), *reversed*, *Billing v. Credit Suisse First*

*Boston Ltd.*, 426 F.3d 130 (2d Cir. 2005) ("epic Wall Street conspiracy"), *rev'd*, 551 U.S. 264,

---

[11] What Judge Pollack found was Lovell Stewart's "unprecedented effort" and "skill and
perseverance" to "gain for the Class the optimum settlement figures" (*Sumitomo*, 74 F. 2d. Supp.
2nd at 396) resulted, even after deducting for all attorney fees and costs, in claiming class
members receiving in excess of 100¢ on the dollar of their actual damages (a) in *Sumitomo* (n.
3); (b) in *In re Soybeans Futures Litigation*, 89 Civ. 7009 (CRN) (N.D. Ill.), in which the Firm
was Chairman of Co-Lead Counsel and the claims, as here, involved alleged manipulation
through the futures and cash markets; and (c) in *In re BP Propane Indirect Purchaser Antitrust
Litig.*, 06-C-3541 (JBZ) (N.D. Ill. Oct. 17, 2006) in which Lovell Stewart was Chairman of Co-
Lead counsel for claims alleging manipulation and price fixing of propane contract prices in
violation of State laws.
[12] *Compare PIMCO,* 1:05-cv-04681, D.E. 38 (order appointing Lovell Stewart as interim
lead counsel) *with id.*, D.E. 572 (order finally approving settlement).

127 S. Ct. 2383 (2007) (Lovell made the plaintiffs' unsuccessful argument to this Court,

successful argument to the Court of Appeals, and the entirely unsuccessful argument to the

Supreme Court).

More recently, Lovell Stewart has been appointed:

- as co-lead counsel in a (so far) successful class action alleging manipulation in violation of the CEA and antitrust violations in the milk futures markets[13];
- as sole lead counsel on the commodity futures market claims in *In re Platinum & Palladium Commodities Litigation*, No. 10-cv-03617 (WHP) (S.D.N.Y. July 20, 2010) ("*Platinum*") (Pauley, J.); *see also* Order in *Platinum* dated Nov. 30, 2010 (granting plaintiffs' motion to compel defendants to produce all of the documents that they produced to the government);
- appointed sole lead counsel in *Commodity Exchange, Inc. Silver Futures & Options Trading Litig.*, 11 MD 2213 (RPP) (S.D.N.Y. 2011) (Case Management Order No. 2, dated March 2, 2011); and
- as co-lead counsel in CEA manipulation cases alleging, as here, manipulation of WTI crude oil futures contracts traded on the NYMEX.[14]

With respect to antitrust claims generally, the Firm or its attorneys have:

- been appointed as Chairman of co-lead counsel or as co-lead counsel or Executive Committee member in numerous other class actions alleging violation of the antitrust laws;
- briefed and successfully argued the first appeal in the United States reversing a dismissal of price fixing claims under *Twombly*[15];
- been appointed to the Executive Committee in the class action that achieved what was then the second largest class action settlement in the history of the federal

---

[13] The Honorable William H. Hibbler appointed the Firm one of two co-lead counsel (after a contested motion) on CEA manipulation and federal antitrust claims in *In re Dairy Farmers of America, Inc.*, 767 F. Supp. 2d 880 (N.D. Ill. 2011); *see* 09-cv-03690 (N.D. Ill.) D.E. 61 dated Feb. 5, 2010 (appointing co-lead counsel).

[14] *In re Optiver Commodities Litig.*, Pretrial Order No. 1, No. 08-cv-6842.  Somewhat similarly, the Honorable Shira Scheindlin appointed the Firm as one of co-lead counsel in *Amaranth* (*see* n.9).  Lovell Stewart briefed and made the successful oral arguments obtaining an order attaching certain assets and certifying the action as a class action. *In re Amaranth Natural Gas Commodities Litig.*, 711 F. Supp. 2d 301 (S.D.N.Y. 2010) (order attaching $72,400,000); *Amaranth*, 2010 WL 3783714 (S.D.N.Y. Sept. 27, 2010) (granting motion for class certification), *petition for review denied*, December 29, 2010 (2d Cir.).  Judge Scheindlin recently commented on Lovell's advocacy in that manipulation case. Hr'g Tr., at 5:2 (S.D.N.Y. July 6, 2011) (". . . your lawyering is usually so excellent . . .").

[15] *Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 901 (2011).

antitrust laws, *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94
C 897 (N.D. Ill.); and

- tried one other (so far) successful class action antitrust claim in this District.

The Firm's experience with the "type of claims" here, also includes repeated

cooperation with the CFTC to develop and enforce the anti-manipulation prohibitions of

the CEA. This repeated cooperation between the Firm and the CFTC may be expected to

continue here as well.[16]  See Firm Resume, Ex. A to Persky Decl.

### 2.     Labaton Sucharow

Labaton Sucharow has long been at the forefront in successfully prosecuting complex

antitrust, commodity futures manipulation and securities class actions. Courts have recognized

the qualifications of Labaton Sucharow by appointing the firm as lead counsel in numerous

major nationwide class actions. Indeed, Labaton Sucharow has been awarded the highest law

firm ranking from *Chambers and Partners USA three* years in a row, and *The National Law*

*Journal* recently selected Labaton Sucharow, for the *fifth* year in a row, as one of the leading

plaintiffs' class action firms in the country. Labaton Sucharow was also recently recognized in

*Legal 500* as a leading law firm in the United States for both its antitrust and securities practices.

Within the past fifteen months alone, Labaton Sucharow has obtained nearly $2 billion in

class action settlements. *See In re Am. Int. Group Sec. Litig*, C.A. No. 04-cv-08141 (JES) (AJP)

(S.D.N.Y.) (over $1 billion settlement to resolve claims that AIG, among others, engaged in a

scheme involving improper commissions and illegal bid rigging); *In re Countrywide Fin. Corp.*

*Sec. Litig.*, C.A. No. 07-cv-05295 (MRP) (C.D. Cal.) ($600 million in settlements with

---

[16]  Both in litigation and in industry panel forums, the Firm has repeatedly argued together
with the CFTC (or spoken along with the Head of the Division of Enforcement of the CFTC) to
enforce or develop the law of CEA manipulation. *See, e.g.*, CFTC Amicus brief in support of the
Firm's argument that there was a private right of action under the CEA for manipulation,
*Curran*, 456 U.S. at 353; *Sumitomo*, 74 F.Supp.2d at 398 ("Plaintiffs' counsel assisted the
government in the preparation by the CFTC of its proceedings which, respectively, were filed
two years and three years after Plaintiffs had commenced this action").

Countrywide and KPMG LLC to settle claims that Countrywide, one of the nations' largest mortgage lenders, violated the federal securities laws).

**Antitrust.** Labaton Sucharow's Antitrust Practice Group has achieved many outstanding results, including, *e.g., In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y.) (obtained, pending final approval, over $440 million in partial settlements); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (D.D.C.) (obtained settlements totaling $135.4 million against Mylan Laboratories, Inc., for unlawful and anticompetitive price increases for generic versions of the anti-anxiety drugs); *In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.) (obtained $90 million to settle claims of monopolistic and anticompetitive conduct concerning BuSpar, an anti-anxiety drug); *In re TriCor Indirect Purchaser Antitrust Litig.*, No. 05-cv-00360 (D. Del. ) (obtained final approval of $65.7 million settlement in antitrust action concerning the cholesterol drug TriCor and its generic equivalents); *In re Puerto Rican Cabotage Antitrust Litig.*, C.A. No. 08-cv-001467 (D.P.R.) (obtained $52 million settlement, pending final approval of the Court, on behalf of businesses injured by an alleged conspiracy to fix the prices of ocean freight services between the continental United States and Puerto Rico); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-cv-00962 (S.D.N.Y.) (obtained settlements totaling $47 million on behalf of a class of equity options purchasers); *In re Warfarin Sodium Antitrust Litig.*, No. 98-md-01232 (D. Del.) (obtained $44.5 million settlement with DuPont Pharmaceuticals Company on behalf of consumers, union health and welfare funds, and private insurers who purchased Coumadin, a blood-thinning drug); *In re Marine Hose Antitrust Litig.*, No. 08-MDL-1888 (S.D. Fla.) (obtained settlements totaling nearly $32 million on behalf of a class of purchasers of marine hose).

**Commodity Manipulation.** In addition to its nationally recognized antitrust and

securities experience, Labaton Sucharow is regularly appointed as lead counsel and has obtained record/precedent setting victories in class actions involving manipulation of commodity futures prices. As co-lead counsel, Labaton Sucharow was instrumental in obtaining what was then the second largest commodity manipulation class action recovery on record ($101 million). *In re Natural Gas Commodity Litigation*, C.A. No. 03-cv-06186 (Marrero, V.) (S.D.N.Y.). Labaton Sucharow is currently co-lead class counsel in *In re Optiver Commodities Litigation* ("*Optiver*"), another major energy commodity futures manipulation class action involving claims that have been recognized by several published reports as similar to those alleged here.[17] 08-CV-6842 (Preska, L.) (S.D.N.Y.) (involving alleged manipulation of NYMEX WTI crude oil, gasoline and heating oil futures contracts prices in violation of the CEA). Labaton Sucharow was also recently appointed to the Steering Committee in a class action alleging antitrust and commodity futures manipulation claims involving silver. *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, 1:11-md-02213-RPP (S.D.N.Y.) (Patterson, J.) (appointing Lovell Stewart interim class counsel and Labaton Sucharow and Hausfeld, among others, to the Steering Committee). It presently serves as one of plaintiffs' counsel in *In re Amaranth Natural Gas Commodities Litig.* ("*Amaranth*"), Master File No. 07 Civ. 6377 (S.D.N.Y) (Scheindlin, J.) (involving commodity futures manipulation class action for alleged manipulation of the prices of NYMEX natural gas futures and options contracts prices in violation of the CEA).

Labaton Sucharow also served as co-lead class counsel in the state-law antitrust class actions brought against Sumitomo and others arising from Sumitomo's manipulation of copper commodity prices, in which Labaton Sucharow obtained a multi-state class action settlement on behalf of copper product purchasers of almost $90 million. *See National Metals Inc. v.*

---

[17] Graham Bowley, *U.S. Suit Sees Manipulation of Oil Trades in 2008*, N.Y. TIMES, May 25, 2011, at B1, available at http://www.nytimes.com/2011/05/25/business/global/25oil.html?_r=2.

*Sumitomo Corp.*, No. GIC 734001, 2003 WL 22183929 (Cal. Super. Jan. 22, 2003) (judgment and order certifying class).[18]

Labaton Sucharow has been recognized for the quality of its legal work on many occasions, including by Judge Koeltl in *In Re Buspirone Antitrust Litig*: "Let me say that the lawyers in this case have done a stupendous job. They really have." MDL No. 1413. No. 1:01-md-01413 (TGK) (S.D.N.Y.) (approving $90 million settlement with Bristol-Myers Squibb) and Judge Pohorelsky in *In re Air Cargo Shipping Services Antitrust Litig.* ("I do want to just make the point that the advocacy has really been remarkable both on the papers and in the arguments today – I really appreciate it. It's been a pleasure to have so many good litigators advocate their positions. So thank you.") No. 06-md-01775 (E.D.N.Y.). Indeed, when it is in the best interests of its clients and the class, Labaton Sucharow has demonstrated its willingness and ability to successfully try complex class actions before a jury. *See, e.g., In re Real Estate Associates Limited Partnership Litig.*, 98-cv-07035 (C.D. Cal.).

Additional details on the firm are supplied in its Firm Resume, attached as Exhibit B to the Persky Decl.

### 3. Hausfeld

Hausfeld LLP is widely acknowledged to be one of the nation's most notable plaintiff's class action firms. The *Legal 500* ranks Hausfeld LLP as one of only three Tier 1 law firms in the "Mass tort and class action: plaintiff representation – antitrust" category, noting also the growing success of the firm's London office – which provides Hausfeld with a presence, unique

---

[18] In addition to the commodity futures manipulation cases mentioned above, Labaton Sucharow has also served as co-lead class counsel in the following major energy commodity futures manipulation class actions: *In re Energy Transfer Partners Natural Gas Litig.*, 4:07-cv-03349 (S.D. Tex.) (Nov. 26, 2007) (appointing Labaton Sucharow one of two co-lead counsel in CEA class action); *In re Crude Oil Commodity Litig.*, No. 06-cv-6677 (S.D.N.Y. 2006) (appointing Labaton Sucharow as one of four interim co-lead class counsel along with Lovell Stewart).

among plaintiffs firms, in the European Union – in the "EU and Competition" category. The firm was also named in the 2010 *National Law Journal* "Plaintiffs' Hot List," which noted that "Hausfeld has quickly positioned itself as a leader in antitrust and class action litigation . . . establish[ing] new frontiers for plaintiffs' legal recovery, while pursuing global cartels and representing victims of apartheid." Most recently, the *Global Competition Review* stated that Hausfeld LLP "is clearly recognized as one of the best plaintiffs firms in the country." Hausfeld attorneys have also been repeatedly recognized as leaders in the class action bar by publications such as *The New York Times* and *The Wall Street Journal.*

Hausfeld LLP is currently serving as co-lead counsel or in leadership positions in 32 major national class action or mass tort cases. Firm members have achieved notable successes in settlements and leadership appointments, including *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y.) (obtained, pending final approval, over $440 million in partial settlements); *In re International Air Transportation Surcharge Antitrust Litig.*, Case No. M:06-cv-01793-CRB, MDL No. 1793 (N.D. Cal.) (Hausfeld LLP appointed interim co-lead counsel on behalf of thousands of air travelers in action alleging price-fixing of air passenger transportation that settled in 2009 for approximately $190 million); *In re Rubber Chemicals Antitrust Litig.*, Master Docket No. C-03-1496 (N.D. Cal.) (Hausfeld LLP lawyers, serving as co-lead counsel, settled the direct purchaser class's global price-fixing claims with certain defendants for more than $300 million), and others. Hausfeld LLP's lawyers have garnered significant praise from District Court judges. In *In Transpacific Air Passenger*, for example, the firm was praised by District Judge Charles R. Breyer of the Northern District of California for its efforts in achieving "really, an outstanding settlement in which a group of lawyers from two firms coordinated the work . . . and brought an enormous expertise and then experience in

dealing with the case." The Court also stated that the firm's lawyers are "more than competent. They are outstanding." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 07-cv-5634, MDL No. 1913, Hr'g Tr., at 5:20-25, 7:11-12 (N.D. Cal., January 30, 2009). Similarly, in *Four In One Co., Inc. v. SK Foods, LP*, No. 08-cv-03017, 2009 WL 747160 (E.D. Cal. Mar. 20, 2009), in an order appointing interim co-lead counsel in an antitrust case alleging a conspiracy by tomato producers of fixing the prices of processed tomato products, District Judge Morrison C. England Jr. of the Eastern District of California praised the Hausfeld firm for having "the breadth of experience, resources and talent necessary to navigate a case of this import." The court held that "[a]lthough there [was] no question that the other firms proposed as co-lead counsel are also well qualified," Hausfeld and one other firm "st[ood] out from the rest," leading the court to appoint Hausfeld and the other firm as interim co-lead Counsel. *Id.* at *3. Hausfeld acts as co-lead counsel alongside Labaton Sucharow in the *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y.) and, as noted above has recently received accolades for its work in that case.

Hausfeld attorneys thus possess wide-ranging expertise in plaintiffs and class action litigation. Moreover, the principal Hausfeld attorneys for this matter – Michael D. Hausfeld and William P. Butterfield – will bring to bear in this case their industry-leading expertise in antitrust, commodities, class action litigation, electronic discovery and negotiation; a blend uniquely capable of ensuring the efficient prosecution of this action and the maximization of recoveries for the class in this case.

Michael D. Hausfeld is the name partner and founder of Hausfeld LLP and his career has included some of the largest and most successful class actions in the fields of consumer protection, antitrust law, and human rights. The *National Law Journal* has recognized him as

one of the "Top 100 Influential Lawyers in America" and the *Legal Times* named Mr. Hausfeld among the top 30 "Visionaries" in the Washington legal community in 2008. The *New York Times* referred to Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," and in 2009 the *Washingtonian* named him one of thirty "Stars of the Bar." The *Global Competition Review* has reported that Mr. Hausfled "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world – and succeeding." The *Legal 500* lists Mr. Hausfeld as one of seven leading antitrust lawyers in the country, in 2008 stating that "[t]he outstanding Mike Hausfeld is a titan of the antitrust bar."

Mr. Hausfeld is also noted as a leading negotiator. For example, he successfully negotiated the first-ever private settlement of a company's global liability in connection with a price-fixing cartel and is one of thirty negotiators profiled in Done Deal: *Insights from Interviews with the World's Best Negotiators*, by Michael Benoliel, Ed.D.

Hausfeld LLP partner William P. Butterfield has significant experience with commodities litigation and plaintiffs' class actions. He currently serves on the Steering Committee of *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, No. 11 md 0221 (S.D.N.Y.), a class action alleging antitrust and commodity futures manipulation claims. Previously, he represented class plaintiffs in *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186 (S.D.N.Y.) and served as outside counsel for federal banking agencies, where he investigated and litigated claims arising from losses in commodity hedging programs used by failed financial institutions. He has prosecuted and defended individuals and companies in federal courts and administrative tribunals in matters involving antitrust violations, securities and commodities fraud, insider trading, takeover litigation, broker-dealer violations and registration issues. He has also taught a course in commodities law and regulation as an adjunct professor at

American University, Washington College of Law.

Mr. Butterfield is also noted for his pioneering role in the development of the electronic discovery field. Mr. Butterfield has been a leader in the field of e-discovery since the early 1990s, when he helped design and implement an electronic document repository to manage more than 15 million pages of documents produced in a complex securities case. In 2005, Mr. Butterfield testified before the U.S. Judicial Conference Rules Committee regarding proposed electronic discovery amendments to the Federal Rules of Civil Procedure. Mr. Butterfield is one of only two plaintiffs' lawyers on the Steering Committee of The Sedona Conference® Working Group on Electronic Document Retention and Production. He is also a member of the Sedona Conference® Working Group on International Electronic Information Management, Discovery and Disclosure. Mr. Butterfield serves on the faculty of Georgetown University Law Center's Advanced E-Discovery Institute and the Masters Conference Advisory Board. Mr. Butterfield has testified as an expert witness on e-discovery issues, and speaks frequently on that topic domestically and abroad. Recently, he served as co-chair for the 12th Annual Sedona Conference® on Complex Litigation, and as a participant at the Duke University School of Law: 2010 Advisory Committee Conference on Civil Rules.

Additional details on the firm are supplied in its Firm Resume, attached as Exhibit C to the Persky Decl.

### 4. Susman Godfrey

Since the firm's founding in 1980, Susman Godfrey has served as lead counsel in hundreds of class actions and complex commercial disputes throughout the country. Susman Godfrey's practice is dedicated exclusively to litigating and trying lawsuits. The firm has represented clients in some of the largest and most complex cases ever litigated and has demonstrated that it has the ability and resources to handle those cases effectively and

efficiently. Susman Godfrey's experience is not confined to a single practice area. Rather, the firm has successfully represented its clients in a wide range of complex commercial disputes, including antitrust and securities class actions. Susman Godfrey's unparalleled experience is more fully detailed in its firm resume attached as Exhibit D to the Persky Decl.

Susman Godfrey's substance and staying power are reflected in its wide recognition as one of the nation's leading firms for litigation, including by The American Lawyer in its first-ever "Litigation Boutique of the Year" competition, as a leading Commercial Litigation Law Firm in ACQ Finance Magazine, and its 1st place Ranking in Chambers USA. The firm's lawyers are consistently recognized as "Super Lawyers" and "Rising Stars" in the states where they practice. Susman Godfrey currently has eighty-eight lawyers, over 90% of whom served in highly sought-after judicial clerkships after law school. Seven of Susman Godfrey's attorneys have clerked at the highest level—for Justices of the United States' Supreme Court.

Among other nationwide class actions in which the firm is currently involved, Susman Godfrey is serving as either lead or co-lead counsel in the following nationwide class actions:

- *In re: Processed Egg Products Antitrust Litigation*, 2:08-md-02002, pending in the Eastern District of Pennsylvania;

- *In re: Municipal Derivatives Antitrust Litigation*, MDL Docket No. 1950, pending in the Southern District of New York;

- *In re: Aftermarket Filters Antitrust Litigation*, MDL Docket No. 1957; Master Docket No. 08-cv-4883, pending in the Northern District of Illinois;

- *In re: Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL Docket No. 1981, pending in the Central District of California.

Stephen D. Susman will personally spearhead Susman Godfrey's efforts in this litigation. Mr. Susman has had a long and distinguished career representing the interests of nationwide classes in high stakes litigation. Mr. Susman served as sole lead counsel in the *In re Corrugated Container Antitrust Litig.*, MDL No. 310 (S.D. Tex.), an antitrust case involving hundreds of co-

counsel.  In 1980, Mr. Susman tried the *Corrugated Container* case to verdict, resulting in antitrust settlements in favor of a plaintiff class that far exceeded historical recoveries.  More recently, Mr. Susman served as one of three co-lead counsel in the *In re Vitamins Antitrust Litig.*, MDL No. 1285 (D.D.C.).  That prosecution of price-fixing claims produced a jury verdict of nearly $150 million after trebling, plus settlements worth more than $1 billion on behalf of classes of direct purchasers of vitamins and vitamin products.

Mr. Susman is the recipient of numerous professional honors.  In 2006 and 2007, Who's Who Legal: The International Who's Who of Business Lawyers named Mr. Susman the World's Leading Commercial Litigator.  Mr. Susman has also been recognized as one of the Best Lawyers in America for over 25 years.  The Business Insider listed Mr. Susman in a January 2010 article as one of the eleven lawyers opponents definitely do no want to see across the aisle.  Mr. Susman is a member of the American Law Institute and a member of the American Board of Trial Advocates.  Additional details concerning Mr. Susman's professional accomplishments are attached as Exhibit E, and a list of Mr. Susman's trial experience is attached as Exhibit F.

**B.     Counsel's Work In Identifying Or Investigating The Claims**

**1.     Lovell Stewart**

Lovell Stewart's work in this case began after the filing of the CFTC Complaint.  Relying on its extensive experience with crude oil futures contract manipulations and other manipulations in prior cases, Lovell Stewart reviewed and analyzed the allegations, and what Lovell Stewart deemed to be the litigation judgments reflected, in the CFTC Complaint.  Lovell Stewart retained and consulted with an economist familiar with the energy markets, reviewed crude oil market data, talked to persons knowledgeable about the crude oil futures markets, and investigated Defendants themselves.  Lovell Stewart then filed the first complaint in these consolidated

actions that alleged that, as in *Sumitomo* (*see* n.3), the manipulation here was a "rolling" manipulation and that the sequence of acts provided a motive to manipulate.

### 2.    Labaton Sucharow

Labaton Sucharow filed the first class action in the country.  In addition, Labaton Sucharow has expended considerable time and resources actively investigating and developing the facts of this case.  Prior to and after filing its complaint, Labaton Sucharow performed valuable substantive work in identifying, examining, and drafting Plaintiffs' claims, including: (1) retaining and consulting an expert economist with vast experience in commodity manipulation analysis, who has already expended considerable resources in estimating damages and analyzing liability; (2) researching and analyzing the potential Defendants; (3) researching legal issues in connection with Plaintiffs' substantive commodities and antitrust claims as well as other issues; (4) analyzing the complaint filed by the CFTC; and (5) drafting a detailed complaint, which differs from the CFTC Complaint and most other complaints filed in the related actions in that it includes a well-developed monopolization claim in addition to allegations of commodity futures manipulation.

Labaton Sucharow has also spearheaded the efforts to reach out to all of the parties in the related actions, both Plaintiffs and Defendants alike, and took the lead in negotiating, drafting and filing Proposed Pre-Trial Order No. 1 on behalf of all the Plaintiffs in the related actions, which was ultimately adopted by the Court.  Bernard Persky of Labaton Sucharow and Christopher Lovell of Lovell Stewart negotiated the proposed schedule for a discovery and pre-motion conference with Defendants set forth in Proposed Pre-Trial Order No. 2.  Thus, in light of having filed the first class action, the extensive work performed by Labaton Sucharow to date, its expenditure of substantial resources leading up the filing of the complaint, and the unquestionable initiative and leadership already demonstrated by Labaton Sucharow in the

consolidated action, Labaton Sucharow has demonstrated its ability and qualifications to be a member of the EC.

### 3.      Hausfeld

Hausfeld LLP has devoted extensive time to investigating the claims and organizing this action. In addition to in-depth independent analysis of the CFTC Complaint, the firm's work in preparation for the action has drawn upon analysis and review of its clients' positions and experience in the marketplace. The firms' clients AIS Futures Management, LLC; AIS Futures Fund II L.P. (2X-4X); AIS Futures Fund III L.P.; and AIS Futures Fund IV L.P., are leading investors and funds with a specific focus on extractive industries products and with large crude oil positions.

### 4.      Susman Godfrey

Like the other proposed members of the EC, Susman Godfrey has taken an early and active role in investigating potential claims on behalf of the putative classes, liaising with plaintiffs and defense counsel, and helping to organize an efficient mechanism for consolidation of related cases and appointment of a leadership structure. Prior to filing suit, Susman Godfrey assembled a team of senior attorneys, including four partners, and tasked them with assessing the putative class's claims. Susman Godfrey's team engaged in significant legal research and consulted with experts and experienced practitioners before filing suit. After filing suit, Susman Godfrey facilitated communications between and among plaintiffs and defense counsel and actively participated in efforts to streamline the process of consolidating the related cases and to develop an orderly process for the appointment of interim lead counsel, as well as the creation of an effective leadership structure. Based on its extensive pre and post-filing efforts, Susman Godfrey stands committed to moving this case forward to its ultimate disposition.

**C.      Rule 23(g)(1)(A)(iii):  Lovell Stewart, Labaton Sucharow, Hausfeld, And Susman Godfrey Possess The Requisite Knowledge Of Commodity Futures Manipulation, Antitrust And Class Action Law**

The law applicable to the substance of the claims here is not CEA law generally or

antitrust law generally.  Rather, the law applicable to the case is the specific law relating to:

(a) what Judge Milton Pollack once found to be the "notoriously difficult to prove"[19]

claim of a manipulation in violation of Section 9(a)(2) of the CEA, 7 U.S.C. § 13;

(b) proof that such manipulation caused "actual damages" within the meaning of the

express private right of action found in Section 22 of the CEA, 7 U.S.C. § 25; and

(c) proof of a violation of Section 1 or 2 of the Sherman Antitrust Act, 15 U.S.C. § 1 and

2, which caused damages under Section 15 of the Clayton Antitrust Act, 15 U.S.C. § 15.

As demonstrated above as well as in their firm resumes attached as Exhibits A-D, Lovell

Stewart, Labaton Sucharow, Hausfeld and Susman Godfrey respectfully submit that their

knowledge of the law applicable to the claims and defenses here is most clearly reflected by their

unparalleled experience in prosecuting similar commodity futures manipulation and antitrust

claims.

**D.      Rule 23(g)(1)(A)(iv):  Lovell Stewart, Labaton Sucharow Hausfeld, And Susman Godfrey Will Commit More Than Ample Resources To Representing The Classes**

**1.      Lovell Stewart**

Lovell Stewart has substantial professional know-how, commodity futures industry

contacts, financial resources, proprietary document software and other resources required to

advance this commodity futures litigation.  Attorneys at Lovell Stewart have more than 70 years'

experience handling CEA manipulation claims.  See Firm resume attached as Exhibit A to the

Persky Decl.  This experience has led to extensive contacts in the commodity futures industry.

---

[19] *Sumitomo*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999).

Further, a very expensive part of commodity price-fixing and manipulation class actions is usually the software vendor costs for millions of pages of electronic document production and trading records. Lovell Stewart has proprietary document review software that has saved the class (and counsel) substantial vendor costs in *PIMCO supra* (ten-plus million pages of documents), *Amaranth supra*, and other class actions. If Lovell Stewart is selected as one of interim class counsel, it will make this software available without charge to all counsel in this action. Finally, Lovell Stewart is also willing and financially able to commit substantial financial resources to this litigation.[20]

### 2.    Labaton Sucharow

Labaton Sucharow has the necessary resources and is committed to prosecuting this action in the best interests of the putative classes. For instance, the Firm is comprised of more than 60 attorneys and a considerable support staff, including private investigators and an in-house economist. In successfully prosecuting class actions for over 40 years, Labaton Sucharow routinely advances the costs of litigation and has demonstrated an ability and willingness to dedicate its substantial resources to vigorously prosecute the claims of putative class members. As reflected by the extensive time and funds it has already committed to this case, Labaton Sucharow is prepared to continue to commit the resources necessary to effectively and vigorously prosecute this case to a successful conclusion.

---

[20] Since May 2011, Lovell Stewart has received final approval of three class actions (including one extremely large class action for manipulation, *PIMCO*, n.4) and has partially settled (subject to final approval) one other action and agreements have been made with multiple agreements to settle have been made with multiple defendants in two antitrust actions (all subject to court approval). As a result of these final or proposed settlements, which total in excess of $300,000,000, Lovell Stewart presently has unused CEA manipulation and antitrust attorney and other resources that may be committed to this litigation. Further, Lovell Stewart recently advanced approximately $2.8 million in costs in *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.) (SAS) and approximately $1.75 million in costs in *PIMCO*. If appointed as an interim class counsel, Lovell Stewart is prepared to do so here as well.

### 3.     Hausfeld

Hausfeld LLP has the resources to advance this litigation to achieve the best results for the class.  The firm currently has 18 lawyers over three offices within the United States with, as noted above, recognized expertise in antitrust and commodities law and class action litigation, electronic discovery and negotiation.  Its business model allows its U.S. attorneys to devote their time exclusively to complex plaintiffs-side class actions such as this.

The firm also has six experienced plaintiffs' attorneys in its London office.  As noted, *infra*, certain of the Defendants are located in the United Kingdom and Switzerland and, thus, Hausfeld attorneys are uniquely capable of assisting in the international aspects of this litigation.

### 4.     Susman Godfrey

Susman Godfrey is likewise fully prepared to devote the resources necessary to prosecute vigorously the claims and interests of the putative class members.  For forty years, it has demonstrated its willingness and ability to commit whatever resources it takes to win in class action litigation.  In addition to the financial ability to fund the potentially substantial costs of this lawsuit, Susman Godfrey possesses the human resources to staff it with top lawyers and the geographic scope to manage discovery and related proceedings anywhere in the United States.

Susman Godfrey already has assembled a team of attorneys who will devote a significant portion of their time to this litigation.  Its team currently includes four partners in the firm's New York and Dallas offices, including the firm's managing partner, Stephen D. Susman.  Mr. Susman will personally direct the firm's efforts and will ensure that adequate staff and resources are committed to the case.

## II. Discretionary Factors Favor Granting The Majority Plaintiffs' Motion

### A. The Court Should Grant The Motion Because It Is Supported By More Than Two-Thirds Of The Related Actions

In addition to its mandatory factors, Rule 23(g)(2) also provides that a Court "may" consider other factors it deems pertinent.

One of these discretionary factors is that, in selecting interim class counsel, courts commonly give weight to plaintiffs' counsel's "self-selection." *See, e.g., In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717, (D. Del. Apr.18, 2006) ("The most common approach to the selection of class counsel is private ordering, in which plaintiffs' counsel agree on which of them should serve as class counsel.") (citation omitted); *Manual For Complex Litig.* § 21.72 (4th ed. 2004) ("By far the most common [method for selecting among competing applicants] is the so-called 'private ordering' approach: The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests."). This is particularly important in the instant case where the proposed EC is supported by counsel and plaintiffs in more than two-thirds of the related actions. The appointment of a leadership structure consisting of other firms may jeopardize this private ordering and undermine the various firms' ongoing cooperative efforts which have already been undertaken to collectively represent their clients' interests.

Here, the proposed leadership structure was formed by consensus following numerous communications over the past several months with counsel representing plaintiffs in all of the related actions. Firms supporting this application include many of the nation's leading antitrust and commodity futures manipulation class action counsel. In an effort to build consensus, these firms have decided to support the appointment of the EC rather than seek their own leadership appointment, although many supporting firms have themselves served as interim class counsel or

on an executive committee in major nationwide antitrust and commodity futures manipulation litigations. The collective judgment of these well-regarded attorneys is entitled to serious consideration. Their decision to set aside their own interests to support the proposed leadership structure is a reflection of their considered judgment that the interests of their clients and the Classes would best be served by doing so.

Accordingly, the Court should give cognizance to this consensus. *See, e.g., In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 1:07-mc-00489-PLF-JMF, 2008 WL 1883447, at *2 (D.D.C. April 28, 2008) (proposing leadership structure supported by majority of plaintiffs while rejecting argument that court should only defer to private ordering where there is complete unanimity among counsel). In sum, with the support of the great majority of the plaintiffs and their counsel in the related actions, Moving Plaintiffs respectfully request that the Court grant their application.

**B.      The Issues In This Case Warrant The Appointment Of A Multiple Firm Leadership Structure**

When selecting interim class counsel, courts (including in this district) frequently appoint 3-4 firm leadership structures. This is particularly true where, as here, the litigation involves complex commodity futures manipulation and/or antitrust claims.[21]

The appointment of a multiple firm leadership structure is especially appropriate here to

---

[21] *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y 2006) (appointing a four-firm co-lead counsel structure in antitrust class action); *In Amaranth Natural Gas Commodities Litig.*, Master File No. 07 Civ. 7377 (S.D.N.Y. 2007), (Revised) Pretrial Order No. 1, entered September 19, 2007, at ¶ V(12) (appointing three firms as co-lead class counsel in commodity futures manipulation class action); *In re Natural Gas Commodity Litig.*, Master File No. 03 CV 6186 (S.D.N.Y 2003) (VM), entered December 5, 2003, at ¶ V(12) (appointing four firms as co-lead class counsel in commodity futures manipulation class action); *In re Sumitomo Copper Litig.*, 96 Civ. 4854 (S.D.N.Y. 1996) (MP) (appointing a three-member executive committee in commodity futures manipulation class action); *In re Soybeans Futures Litig.*, 89 Civ. 7009 (N.D. Ill.) (CRN) (appointing four firms co-lead class counsel in commodity futures manipulation class action).

ensure that the various interests of the differing Classes are protected.  For example, this litigation includes allegations of *both* commodity manipulation and antitrust violations and the classes of traders involved in each of those claims, while overlapping, are not the same.  The four firms comprising the EC have a wealth of experience prosecuting both commodity manipulation and antitrust cases.  Indeed, several of the firms comprising the EC possess the unique experience of prosecuting complex class actions which allege, in a single action, violations of both the Commodity Exchange Act and the Sherman Act.

In addition, a number of complaints filed in this consolidated action allege that Defendants' manipulation is not limited to WTI futures contracts traded on NYMEX, but extends to all WTI derivatives, including futures contracts traded on IntercontinentalExchange Inc.'s ICE Futures Europe ("ICE") exchange.  Proving these allegations, involving several defendants headquartered abroad[22], will inevitably require a sophisticated and specialized knowledge of these related commodity markets which have been manipulated and the technical understanding of how each of those markets operate and interact with one another.  A multiple lead counsel structure will be of assistance in delegating leadership responsibilities in these areas.

## CONCLUSION

For the foregoing reasons, this Court should appoint Lovell Stewart as Chair and Labaton Sucharow, Hausfeld and Susman Godfrey as members of the Executive Committee.

---

[22] Defendant Arcadia Petroleum Ltd. is a company organized under the laws of the United Kingdom with its principal place of business in London, England.  Defendant Arcadia Energy (Suisse) SA is a corporation organized under the laws of Switzerland with its principal place of business in Switzerland.  Defendant James T. Dyer is an individual residing in Brisbane, Australia.

25

Dated: New York, New York

August 11, 2011

Respectfully submitted,

_____/s/ Bernard Persky_____

By:   Bernard Persky
      Hollis Salzman
      William V. Reiss
      LABATON SUCHAROW LLP
      140 Broadway
      New York, New York 10005
      Telephone: (212) 907-0700
      bpersky@labaton.com
      hsalzman@labaton.com
      wreiss@labaton.com

      *Counsel for Plaintiff*
      *Stephen Ardizzone*


      *Christopher Lovell / WVR*

By:   Christopher Lovell
      Ian Stoll
      LOVELL STEWART HALEBIAN
      JACOBSON LLP
      61 Broadway, Suite 501
      New York, New York 10006
      Telephone: (212) 907-0700
      clovell@lshllp.com
      istoll@lshllp.com

      *Counsel for Plaintiff Gregory Galan*

*Michael Hausfeld / WPB*

By:   Michael D. Hausfeld
      William P. Butterfield
      Ralph J. Bunche
      HAUSFELD LLP
      1700 K Street, NW, Suite 650
      Washington, D.C. 20006
      Telephone: (202) 540-7200
      MHausfeld@hausfeldllp.com
      WButterfield@hausfeldllp.com
      RBunche@hausfeldllp.com

      *Counsel for Plaintiffs AIS Futures
      Management, LLC; AIS Futures Fund
      II L.P. (2X-4X); AIS Futures Fund III
      L.P.; and AIS Futures Fund IV L.P.*


*Steven Susman / WPB*

By:   Steven D. Susman
      Rebecca Tinio
      SUSMAN GODFREY LLP
      560 Lexington Avenue, 15th Floor
      New York, New York 10022-6828
      Telephone: (212) 336-8330
      ssusman@susmangodfrey.com
      rtinio@susmangodfrey.com

      *Counsel for Plaintiff Adams Affiliates,
      Inc.*