UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE: CRUDE OIL COMMODITY FUTURES            Master File No.
LITIGATION                                                     11-cv-3600

                                                                      **ECF Case**

                                                                      Hon. Katherine B. Forrest

_____


### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
### PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**BURNS CHAREST LLP**                          **LOVELL STEWART HALEBIAN**
Warren Burns                                            **JACOBSON LLP**
500 North Akard                                         Christopher Lovell
Dallas, Texas 75201                                    61 Broadway, Suite 501
Telephone: (469) 904-4550                        New York, NY 10006
Facsimile:  (469) 444-5002                        Telephone: (212) 608-1900
Email: wburns@burnscharest.com            Facsimile: (212) 719-4775
                                                                Email: clovell@lshllp.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................................... 3

    A.    Summary of the Allegations ............................................................................. 3

    B.    The Procedural History of the Action ............................................................... 5

    C.    The Parties' Positions During the Settlement Agreement Negotiations ..................... 5

    D.    The Settlement Agreement ................................................................................ 5

        1.    The Benefits to the Class: $16,500,000 Escrow Account Plus No
             Reversion to Defendants for those Settlement Class Members Who Fail
             to Claim ................................................................................................. 5

        2.    The Settlement Class ............................................................................. 6

        3.    Right to Opt-Out .................................................................................... 6

        4.    The Release and Covenant Not To Sue .................................................. 6

        5.    Notice .................................................................................................... 7

        6.    The Proposed Plan of Allocation .......................................................... 7

        7.    Termination Rights ................................................................................ 8

III.  ARGUMENT ............................................................................................................... 9

    A.    Preliminary Approval Should Be Granted Because The Proposed Settlement
        Agreement Falls Well Within "The Reasonable Range of Approval" ...................... 9

        1.    The Legal Standards Governing Preliminary Approval ........................... 9

        2.    The Settlement Agreement is Procedurally Fair and is Entitled to a
             Presumption of Fairness ......................................................................... 9

        3.    The Proposed Settlement Agreement is Substantively Fair ................... 10

            a.    The Absence of Clear Precedent in CEA Manipulation Cases .............. 11

            b.    Factor 1: The Complexity, Expense And Likely Duration Of The
               Litigation ............................................................................................. 11

# TABLE OF CONTENTS
## (Continued)

Page

| | | |
|---|---|---|
| c. | Factor 2: The Reaction of the Settlement Class to the Settlement Agreement | 12 |
| d. | Factor 3: The Stage of the Proceedings and the Amount of Discovery Completed | 12 |
| e. | Factors 4, 5 and 6: The Risks of Establishing Liability, Damages and Maintaining the Class Action Through Trial | 13 |
| f. | Factor 7: The Ability of the Defendants to Withstand a Greater Judgment | 13 |
| g. | Factors 8 and 9: The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation | 14 |

B. The Form of The Proposed Notice Satisfies the Requirements of Rule 23 and Due Process and The Proposed Program of Notice Provides "The Best Notice Practicable Under the Circumstances" ........ 17

1. The Legal Standards Governing Notice ........ 17

2. The Proposed Notice Includes All the Requirements of Rule 23(c)(2)(B) and Comports With Due Process ........ 18

3. The Proposed Notice Plan is the Best Practicable Under the Circumstances ........ 18

C. The Settlement Class Should be Certified for Settlement Purposes Because it Satisfies the Four Requirements of Rule 23(a) and the Two Prongs of Rule 23(b)(3) ........ 21

1. The Settlement Class Satisfies the Four Requirements of Rule 23(a) ........ 21

   a. Rule 23(a)(1)—The Members of the Settlement Class are so Numerous that Joinder of All Members is Impracticable ........ 21

   b. Rule 23(a)(2)—There Are Numerous Questions of Law and Fact Common To The  Settlement Class ........ 22

   c. Rule 23(a)(3) —The Claims and Defenses of the Settlement Class Representatives are Typical of the Claims and Defenses of the Settlement Class ........ 22

   d. Rule 23(a)(4) —The Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class ........ 23

**TABLE OF CONTENTS**
**(Continued)**

Page

2.     The Settlement Class Satisfies The Two Prongs of Rule 23(b)(3) .................. 23

a.     Common Questions of Law and Fact Predominate ............................... 24

b.     A Class Action is the Superior Method To Adjudicate These
Claims ....................................................................................................... 24

D.     The Court Should Appoint Lovell Stewart and Burns Charest to Act as Lead
Counsel for the Settlement Class ................................................................................ 25

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
222 F.3d 52 (2d Cir. 2000)..................................................................................... 23

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 488 (1980).................................................. 6

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................... 10, 11

*Hershey, et al., v. Pacific Investment Management Company LLC, et al.*, 05-cv-04681
(RAG), (N.D. Ill. Jan. 26, 2011) ................................................................... 18

*In re Currency Conversion Fee Antitrust Litig.*,
01 MDL 1409, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) .................. 1, 2, 9, 13

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................. 11, 12, 21

*In re Initial Public Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ............................................................... 22, 23, 24

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................... 12

*Strougo v. Bassini*,
258 F.Supp.2d 254 (S.D.N.Y. 2003)................................................................... 12

**Other Authorities**

Jerry W. Markham,
Manipulation of Commodity Futures Prices – The Unprosecutable Crime,
8 Yale J. on Reg. 281 (1991) ............................................................................. 11

**Rules**

FED. R. CIV. P.  23………………………………………………………………….…
*passim.*

## I.    INTRODUCTION

Plaintiffs,[1] on behalf of themselves and the Settlement Class (defined below), respectfully submit this memorandum in support of their motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of the Stipulation and Agreement of Settlement ("Settlement Agreement").[2]

The Settlement Agreement was executed by Plaintiffs and the Defendants[3] on June 3, 2015, and will establish an Escrow Account of $16,500,000.  If approved, the Settlement Agreement will resolve all claims in this Action that Defendants manipulated prices and caused losses in the trading of West Texas Intermediate ("WTI") crude oil futures contracts and WTI options on futures contracts on the New York Mercantile Exchange ("NYMEX") (Contract Codes CL, LC or LO only) and the WTI futures contracts on the Intercontinental Exchange ("ICE") (Contract Code T only) and monopolized the market for certain WTI crude oil during the Class Period.  *See* ECF No. 66 at ¶¶ 46–108.

The settlement of a class action requires court approval.  FED. R. CIV. P.  23(e).  Courts favor settlements.  *Garcia v. Bae Cleaners Inc.*, No. 10-cv-7804,  2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").  After a proposed class action settlement is reached, a court must determine whether the proposed settlement warrants preliminary approval.  *In re Currency Conversion Fee Antitrust Litig.*, 01-MDL-1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006). ("*Currency Conversion*").

---

[1] "Plaintiffs" refer to Plaintiffs John Losordo, Jr., Todd Kramer, FTC Capital GmbH, and Adams Affiliates, Inc.
[2] A copy of the Settlement Agreement and its exhibits are attached to the Declaration of Warren Burns ("Burns Decl.") as Exhibit 1.  Capitalized terms herein that are defined in the Settlement Agreement have the same meaning as in the Settlement Agreement.
[3] "Defendants" refers to Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, James T. Dyer, and Nicholas Wildgoose.

After preliminary approval has been granted, notice is then sent to members of the class, including notice of a "fairness hearing" where class members and the parties to the settlement may be heard before the court grants final approval of the settlement. *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *13. After such fairness hearing, the district court finally determines whether the proposed class action settlement is both procedurally and substantively fair, reasonable and adequate. *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009).

Plaintiffs, on behalf of themselves and the proposed Settlement Class, now respectfully move the Court to grant preliminary approval of the Settlement Agreement and enter the [Proposed] Order Preliminarily Approving Proposed Settlement, Scheduling Hearing For Final Approval Thereof, and Approving the Proposed Form and Program of Notice To The Class ("Scheduling Order") attached as Exhibits 1 and 1–D through 1–F to the Burns Declaration, that, among other things:

1. finds the Settlement Agreement to be sufficiently fair, reasonable, and adequate to warrant dissemination of notice of the Settlement Agreement to the Settlement Class (*See generally* Burns Decl. Ex. 1);

2. certifies the proposed Settlement Class for settlement purposes, (*see id.* ¶1(c));

3. appoints the firms Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") and Burns Charest LLP ("Burns Charest") as Lead Counsel for the Settlement Class, (*id.* ¶1(q));

4. appoints Plaintiffs John Losordo, Jr., Todd Kramer, FTC Capital GmbH, and Adams Affiliates, Inc. as representatives of the Settlement Class;

5. finds the notice plan to be the best practicable notice under the circumstances, (*id.* ¶1(f));

6. approves the forms of and substance of the notice of the Settlement Agreement to the Settlement Class *(id.*);

7. approves A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator and Escrow Agent, (*see id.* Ex. 1–B at 3), and;

8.  sets a schedule leading to the Court's consideration of final approval of the Settlement Agreement, including:

   a.  the date, time, and place for a hearing to consider the fairness, reasonableness and adequacy of the Settlement Agreement ("Fairness Hearing"), (*id*. Ex. 1–D ¶4);

   b.  the deadline for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement Agreement, (*id*. ¶19);

   c.  the deadline for Lead Counsel to submit a petition for attorneys' fees and reimbursement of expenses, and incentive awards for Settlement Class representatives, (*id*. ¶12); and

   d.  the deadline for members of the Settlement Class to object to the Settlement Agreement and any of the related petitions, (*id*. ¶13–18).

At the Fairness Hearing, Plaintiffs will request the entry of a final order and judgment substantially in the form of Exhibit 1–G to the Burns Declaration. The proposed final judgment would dismiss the Action as to the Defendants and retain jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.    STATEMENT OF FACTS

### A.    Summary of the Allegations

Plaintiffs allege that each Defendant, between January 1, 2008 and May 15, 2008, inclusive (the "Class Period"), caused and aided and abetted the causation of artificial prices in NYMEX and ICE WTI futures contracts and options contracts on such futures contracts, to the extent such contracts were traded or held at any time between January 1, 2008 through May 15, 2008, inclusive (the "Class Contracts"). Plaintiffs allege that Defendants violated the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq.*, and the Sherman Antitrust Act, 15 U.S.C. §2 by amassing dominant physical WTI crude oil positions in a scheme to drive the price of WTI to artificial highs and then back down. (*See*, *e.g.*, ECF No. 66 at ¶¶46–55).

Defendants were allegedly aware that physical WTI crude oil was in tight supply at Cushing. Plaintiffs allege that, acting on this information, Defendants intentionally purchased

"long spread positions" (as defined in ¶4.A of the Consolidated Amended Class Action Complaint) in WTI. Plaintiffs allege that, in order to create a shortage of the physical crude oil, thereby driving the price of WTI up, Defendants intentionally began to purchase large amounts of physical WTI crude oil. Plaintiffs further allege that Defendants' possession of a dominant amount of the market's available WTI physical crude oil falsely signaled to the market that WTI crude oil was rapidly being purchased, which caused WTI crude oil prices and Class Contracts prices to become artificially inflated. Plaintiffs allege that Defendants then sold out their long spread positions and purchased new "short positions" (as defined in ¶4.D of the Consolidated Amended Class Action Complaint), reaping the benefits of the artificially high prices. Plaintiffs contend that as a final step in their scheme, Defendants then dumped their physical holdings of WTI back into the market on the last day of the "cash window" to drive prices down, producing a large profit on Defendants' short positions, enabling them to begin the manipulation once again.

Plaintiffs allege that at no time during this scheme did Defendants have a commercial need for the large amounts of WTI crude oil supplies they amassed. Plaintiffs allege that the physical WTI crude oil purchased by Defendants during the Class Period artificially inflated the price for Class Contracts. Plaintiffs allege that when Defendants sold their physical WTI crude oil, it caused the price for NYMEX and ICE WTI to drop drastically. Plaintiffs allege that Defendants' conduct caused Plaintiffs and others similarly situated to transact in an artificial and manipulated market at manipulated and artificial prices during the Class Period. (*See, e.g.*, ECF No. 66 ¶4C). Plaintiffs further allege that Plaintiffs and Settlement Class Members who held positions in Class Contracts at the times that Defendants allegedly manipulated the prices of those contracts and thereafter liquidated their positions in such contracts at artificial prices suffered damages even if

such liquidations occurred after the Class Period. (*See id.* at ¶64). Plaintiffs also allege that Defendants' manipulation constituted a contract, combination or conspiracy in restraint of trade and an attempt to monopolize and monopolization of the market for the Class Contracts. (*Id.* at ¶¶66–69. Finally, Plaintiffs allege that Defendants attempted to and did manipulate the markets for Class Contracts. (*Id.*).

Defendants have consistently and vigorously denied Plaintiff's claims and allegations. By entering into the Settlement Agreement with Plaintiffs, Defendants do not admit and continue to deny that they engaged in any unlawful conduct, and that any member of the Settlement Class suffered compensable damages. Absent a settlement, Defendants would continue to vigorously oppose Plaintiff's claims and allegations of damages.

### B.    The Procedural History of the Action

The procedural history of the Action is set forth at length in the attached Burns Declaration at paragraphs seven through twenty-seven.

### C.    The Parties' Positions During the Settlement Agreement Negotiations

The Parties' respective positions are set forth at length in the attached Burns Decl.

### D.    The Settlement Agreement

The Settlement Agreement and its exhibits include the following material terms.

### 1.    The Benefits to the Class: $16,500,000 Escrow Account Plus No Reversion to Defendants for those Settlement Class Members Who Fail to Claim

The Settlement Agreement provides for two benefits to Settlement Class members. First, the Defendants will provide the Settlement Class Members total compensation in the amount of $16,500,000. Burns Decl. Ex. 1 at ¶3. Second, the shares of these monies due to Settlement Class Members who fail to submit a claim will not revert to Defendants and will, instead, be added and included in the calculation of the payment to the Settlement Class Members who do

submit claims. However, if the claims went forward and if Plaintiffs did prevail at trial, then Defendants could argue that the claims of those class members who did not claim should revert to Defendants. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 488 (1980).

### 2. The Settlement Class

For purposes of the Settlement Agreement, the Parties have proposed certification of the Settlement Class defined as follows[4]:

> All persons or entities that purchased, sold, or otherwise traded, during the period from January 1, 2008 through May 15, 2008 ("Class Period") a light sweet crude oil (WTI) futures contract or an option on such light sweet crude oil (WTI) futures contract traded on the New York Mercantile Exchange ("NYMEX")(Contract Codes CL, LC or LO only) and/or the Intercontinental Exchange ("ICE")(Contract Code T only). Excluded from the Settlement Class are (i) Defendants and any parent, subsidiary, affiliate, or agent of any Defendant; and (ii) Opt Outs (as defined in Section 1(s) hereof).

Burns Decl. Ex. 1 at ¶1(c).

### 3. Right to Opt-Out

Given the timing of the Settlement Agreement, if, notwithstanding the foregoing, any Settlement Class members do not have the same judgment about the fair compensation here as does Lead Counsel, then those Settlement Class members have the right to opt out of the Settlement Agreement, provided the Court has not entered or withdrawn its Final Order and Judgment. *Id.* at ¶¶1(s), 13.

### 4. The Release and Covenant Not To Sue

In exchange for the foregoing consideration, Plaintiffs and the Settlement Class have agreed to release and discharge Defendants from any and all claims against Defendants for losses

---

on their transactions in Class Contracts during the Class Period as fully set forth in Paragraph 9 of the Settlement Agreement. *Id*. at ¶8.

### 5.    Notice

The proposed notice plan is comprehensive and calculated to reach – by direct mail alone – potentially all persons who are members of the Settlement Class.  In addition, publication notice will be provided by advertisements in Futures Magazine, Stock and Commodities Magazine and The Wall Street Journal.  Notice will also be provided by a settlement website that is searchable on the internet.  The proposed notice is attached as exhibits 1–E and 1–F to the Burns Declaration.

### 6.    The Proposed Plan of Allocation

The Proposed Plan of Allocation is set out in detail in the Burns Declaration.  Burns Decl. Briefly, the proposed plan of allocation is based on Plaintiffs expert's economic calculations of artificial impact that Defendants' activities allegedly had on the prices of Class Contracts for each trading day during the Class Period.

The Plan of Allocation effectively determines each Settlement Class Member's claim as the amount by which each Settlement Class Member was harmed or adversely affected by the alleged manipulation minus the benefits, if any, such Settlement Class Member received from the alleged manipulation, for each day of the Class Period. Specifically, the Plan of Allocation provides that each Settlement Class Member's allowed claim (as defined in ¶1(y)of the Settlement Agreement) shall be based on the Adverse Impact such Settlement Class Member suffered less any applicable benefit.  The Adverse Impact suffered by each claiming Settlement Class Member is defined to mean the amount by which the sum of the Artificiality Paid (as defined in ¶¶2, 8 of the Plan of Allocation, Burns Decl. Ex. 1–C) by a Settlement Class Member on all transactions in Class Contracts exceeds the sum of the Artificiality Received (as defined in

¶¶11 of the Plan of Allocation) by that Settlement Class Member on all transactions in Class Contracts.

The Net Settlement Fund (as defined in ¶1(gg) of the Settlement Agreement, Burns Decl. Ex. 1) shall be distributed as follows: Ninety Percent (90%) of the Net Settlement Fund is to be distributed according to the Claiming Class Members' net artificiality paid, or "NAP Transactions," (as defined in ¶9 of the Plan of Allocation). *See* Plan of Allocation, Burns Decl. Ex. 1-C at ¶5. Ten percent (10%) of the Net Settlement Fund is to be distributed according to the Claiming Class Members' net loss, "NL Transactions" (as defined in ¶ 4 of the Plan of Allocation). *Id.* at ¶6.

### 7. Termination Rights

The Settlement Agreement gives Defendants limited rights to terminate the settlement prior to entry of final judgment. Burns Decl. Ex. 1 at ¶20. Defendants may terminate the Settlement Agreement within twenty-one days of notice to the other Parties of the following: (i) the Court denies Plaintiffs' motion for approval of the Scheduling Order; (ii) the Court declines to enter the Final Order and Judgment, including, without limitation, incorporating the release and covenant not to sue; (iii) the Final Order and Judgment is withdrawn, rescinded, reversed, vacated, or modified by the Court or on appeal; or (iv) the Opt Out Threshold has been reached and Defendants elect to terminate. Pursuant to the Settlement Agreement, if Defendants exercise their termination rights, Plaintiffs' claims will not be dismissed, or, if Plaintiffs' claims have already been dismissed, they will be reinstated. *Id*. at ¶20(b).

### 8. No Reversion Rights

There will be no reversion rights to Defendants under the Settlement Agreement.

## III.  ARGUMENT

### A.  Preliminary Approval Should Be Granted Because The Proposed Settlement Agreement Falls Well Within "The Reasonable Range of Approval"

#### 1.  The Legal Standards Governing Preliminary Approval

This Court has previously held that:

> where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval, preliminary approval is granted.

*Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *13 (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997).  Here, the Settlement Agreement has no "obvious deficiencies."  *Id*.  Plaintiffs address non-collusive negotiations and the reasonableness of the consideration in detail in III.A.2 and 3 below.

#### 2.  The Settlement Agreement is Procedurally Fair and is Entitled to a Presumption of Fairness

A class action settlement is entitled to a presumption of fairness, adequacy and reasonableness when "there were arm's length negotiations between experienced counsel after meaningful discovery."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The negotiations that produced the Settlement Agreement here were strictly at arm's length and free of collusion.  Burns Decl. ¶4.  The Parties to the Settlement Agreement have been represented by experienced counsel. *Id*. at ¶5.  The proposed Settlement Agreement is the product of hard-fought extensive negotiations, which involved multiple in-person meetings and telephone conferences, hundreds of e-mails, and an extensive review of the discovery obtained to date.

In light of their considerable prior experience in complex class action litigation involving CEA and antitrust claims, their knowledge of the strengths and weaknesses of Plaintiffs' claims and their assessment of the Settlement Class's likely recovery following trial and appeal, Lead Counsel concluded that the Settlement Agreement is fair, reasonable and adequate. *In re Paine Webber Ltd. Partnerships. Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.1997) ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations omitted).

### 3.    The Proposed Settlement Agreement is Substantively Fair

"The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable, and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). **For purposes of final approval**, courts in this Circuit may consider the following nine factors:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[5]  "[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436,

---

[5] *See also Aguilera v. Cookie Panache by Between the Bread, Ltd.*, 2014 U.S. Dist. LEXIS 69716 (S.D.N.Y. May 20, 2014) (Forrest, J.) (in a Fair Labor Standards Act case, this court performed a similar analysis to determine the reasonableness of a settlement).

456 (S.D.N.Y. 2004) (internal quotation marks omitted).  As set forth below, the *Grinnell* factors strongly support preliminary approval of the Settlement Agreement.

### a.    The Absence of Clear Precedent in CEA Manipulation Cases

Unlike with federal securities law class actions, in which more than one hundred cases per year are often filed, CEA commodity futures manipulation class actions are relatively rare, averaging approximately one commodity manipulation class action filed every two years.[6]  This lack of precedent makes evaluating the strength of a CEA case more difficult and more unpredictable than, for example, securities class actions.

For example, there have been differing decisions involving whether the heightened pleading standard under Rule 9(b) applies.  *In re Crude Oil Commodity Litig.*, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) (recognizing split of authority).  Thus, CEA manipulation law—unlike federal securities law or federal antitrust law—is somewhat of an "open field" for Defendants to argue for what Plaintiffs view as restrictive application of the limited precedent.  There is potentially a wide divergence of outcomes that could result from continued litigation in many fact scenarios (including those here).

### b.    <u>Factor 1</u>: The Complexity, Expense And Likely Duration Of The Litigation

There is a consensus that claims for manipulation in violation of the CEA are complex and difficult to prove.  *See In re Sumitomo*, 74 F. Supp. 2d at 397 ("[G]enerally, price manipulation cases are notoriously risky and are more difficult and risky than securities fraud cases[.]").  In the absence of this Settlement Agreement, the litigation of this complex case would likely have consumed many more years of judicial resources.  *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261

---

[6] A LEXIS search for commodity manipulation class actions yielded only forty-nine entries, going back to 1974. (The search of the ALLFEDS database specified the following terms: "class /3 action /p commodity! /s manip!".) When duplicate entries and non-commodity cases were culled from the list, only twenty-three cases remained, averaging one commodity manipulation class action filed every two years.

(S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class") (internal quotations omitted). The Settlement Agreement allows the Parties and the Court system to avoid the significant expense of continued and protracted litigation. The costs of experts, the costs of preparing the voluminous pre-trial order, the costs of trial and appeals would have been substantial.

The Settlement Agreement eliminates the foregoing complexities, substantial expenses, the potential for additional years of continued litigation from appeals and provides a prompt recovery to the Settlement Class. *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.").

### c.    Factor 2: The Reaction of the Settlement Class to the Settlement Agreement

At this time, Plaintiffs are not aware of any objections to the Settlement Agreement. One benefit of this Settlement Agreement at this juncture is that any Settlement Class Member who has a different judgment than Lead Counsel about the Settlement Agreement may opt out. After the Settlement Class has been provided notice of the Settlement Agreement, Plaintiffs will address the Settlement Class's reaction in their motion seeking final approval.

### d.    Factor 3: The Stage of the Proceedings and the Amount of Discovery Completed

This factor is designed to "assure the Court that counsel for the plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *In re Global Crossing Securities* 225 F.R.D. at 458. Extensive factual and expert discovery and investigation had been completed before the Settlement Agreement was concluded. Burns Decl. ¶6. Thus, at

the time the Settlement Agreement was reached, Lead Counsel were well-informed of the factual landscape of the Action and the uncertainties and risks confronting them. *Id*.

  e.  __Factors 4, 5 and 6__: **The Risks of Establishing Liability, Damages and Maintaining the Class Action Through Trial**

  As this Court has recognized, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Currency Conversion*, 263 F.R.D. at 123. Continuing this complex litigation against the Defendants would entail a lengthy and highly expensive legal battle involving complex legal and factual issues. Defendants' have vigorously challenged class certification in this case. Establishing damages herein would have required significant expert testimony. Defendants had significant factual and legal defenses, which created real risk that Plaintiffs would not establish liability. *See* Burns Decl. at ¶28. Even if Plaintiffs did establish liability, there was a very real risk that they would not establish entitlement to damages of more than a minuscule fraction of what Plaintiffs asserted. Plaintiffs acknowledge that, if these risks materialized, their impact would have been substantial for all parts of the claims and perhaps dispositive for most parts of the claims.

  f.  __Factor 7__: **The Ability of the Defendants to Withstand a Greater Judgment**

  Plaintiffs believe that Defendants could withstand a judgment greater than the $16,500,000 Escrow Account they have agreed to establish as part of the Settlement Agreement. However, this fact does not indicate that the Settlement Agreement is not fair, reasonable or adequate. *In re Tronox*, 2014 U.S. Dist. LEXIS 158767, at *21 (S.D.N.Y. Nov. 10, 2014) (Forrest, J.) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved–indeed, if it did, it is hard to imagine why a defendant would ever settle a case").

g.    <u>Factors 8 and 9</u>: **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The eighth and ninth *Grinnell* factors together address the reasonableness of the settlement "in light of the best possible recovery" and "the attendant risks of litigation." (internal citations omitted). *Grinnell*, 495 F.2d at 463.

The Settlement Agreement satisfies Factors 8 and 9. Plaintiffs have obtained the settlement of $16.5 million to be paid into an escrow fund thereby satisfying the collection component and a portion of the damages component. Plaintiffs also have obtained the waiver by Defendants of any potential post-trial reversionary rights. *See* "Benefits" "D.1" *supra*. As a result, the "recovery" by Settlement Class Members who do submit proofs of claim may be enhanced compared to a post-trial recovery. This is because ***all*** monies that would otherwise have been due to Settlement Class Members who do not claim and would potentially have reverted to Defendants will be paid and included in the distributions to those Settlement Class Members who ***do*** claim.

(a) **Best Possible Damages**

Plaintiffs' expert currently estimates that, using his full artificiality numbers, the highest possible amount of artificial impact the class could prove at trial, assuming the jury finds in favor of the Plaintiffs on all issues, is approximately $711.7 million for NYMEX and ICE futures and $340.9 million for NYMEX options. For purposes of this settlement, however, the amount of equitable recovery to each Settlement Class Member ("SCM") should be adjusted to take account of two factors. First, an individual Settlement Class Member could have benefits from price artificiality that would have reduced the damages; (it could be that the profile of the Settlement Class resulted in lower aggregate damages than those estimated above). Second, the method of assessing price artificiality here did not separate the degree of futures price artificiality

14

from the cash market price artificiality (as some methods of assessing artificiality have done in prior CEA manipulation cases). In order equitably to account for the risk of deductions in damages to Settlement Class Members who held cash market positions that benefited from price artificiality, Plaintiffs have included a potential fifty percent (50%) hedging discount in the Plan of Allocation.

Of course, these estimates must also be viewed under the lens of the possible results at class certification, summary judgment, trial and beyond. As noted above, there are substantial hurdles that have not yet been cleared by Plaintiffs, including class certification, and summary judgment, which are pending. Assuming Plaintiffs prevailed on both of those motions, Plaintiffs face significant risks at trial, including both establishing liability and damages, and the battle of the experts that would pervade the entire trial process, as discussed below. Of course, even if Plaintiffs were to prevail at trial, there is significant further risk in the appellate process. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 2015 U.S. App. LEXIS 8424, *59 (7th Cir. Ill. May 21, 2015) (reversing and remanding $2.46 billion judgment for new trial). And even if the judgment was upheld, there is the additional risk that the Class Members will not claim their recovery.[7]

Continuing this complex litigation would entail a lengthy and highly expensive legal battle involving complex legal and factual issues. Defendants have significant defenses which create real risk that the Plaintiffs will not establish liability. Establishing damages will require significant expert testimony. In addition to the foregoing risks, during the course of the parties' settlement negotiations, Defendants and their experts have vigorously disputed Plaintiffs'

---

[7] If the Class did obtain a larger nominal verdict and sustained it on appeal, there was the further risk of the failure by Class Members to claim. For example, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980), the defendant owed a specified judgment but the entitlement to portions of that judgment by class members who failed to claim was forfeited (except for the attorneys' fee) back to the defendants because the class members did not file a proof of claim. The Settlement Agreement accounts for this risk by prohibiting any reversion to Defendants.

methodology for estimating artificiality and damages. *See* Response Report of Ramsey Shehadeh, PH.D., dated September 8, 2014 and Responsive Report of Matthew A. Evans, dated September 8, 2014, both filed under seal. Indeed, Defendants' very well-credentialed experts opined that Plaintiffs' could not establish, *inter alia*, artificiality, causation or domination. Defendants presented expert analysis tending to show that, even assuming, *arguendo*, that multiple risks could be overcome and any liability could be established, then any alleged damages caused by the alleged manipulation were either non-existent or, vastly overstated. Absent a settlement, these attacks would have been further developed and pursued in Court.

In the foregoing context, Lead Counsel's analysis was and is that the consideration under the proposed settlement will provide fair, reasonable, and adequate compensation to claiming Class members in light of the attendant risks of litigating the case.

### (b)    Collection

Lead Counsel believe that Defendants could pay a substantial judgment. However, recovering the theoretical maximum nominal damages, while possible, is, in Lead Counsel's judgment, much more questionable in light of the Defendants' colorable defenses. Further, collection in this case might entail complicated efforts to enforce a judgment overseas or to seize assets. Entering in the Settlement removes this uncertainty.

### (c)    Recovery

As discussed above, each claiming Settlement Class Member's actual recovery from their proof of claim will be significantly enhanced by the absence of any reversion with respect to Settlement Class Members who opt out or Settlement Class Members who fail to submit proofs of claim. Lead Counsel expect that, in view of all the circumstances in this type of case, it is

likely that the inevitable enhancement resulting from the Defendants' reversion waiver will be **at least two, and likely three or more times** as much as in the absence of the reversion waiver.

In sum, the *Grinnell* factors all weigh in favor of the Court finding that this is "compromise is fair, reasonable, and adequate." *Weinberger*, 698 F.2d at 73

### B. The Form of The Proposed Notice Satisfies the Requirements of Rule 23 and Due Process and The Proposed Program of Notice Provides "The Best Notice Practicable Under the Circumstances"

### 1. The Legal Standards Governing Notice

After a class action settlement has been preliminarily approved, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). When a class is certified for settlement purposes under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).  In particular, the notice must:

> …clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).

*Id*.  Notice regarding a proposed settlement is adequate under both Rule 23 and the Due Process Clause if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and it can "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15.

17

### 2.    The Proposed Notice Includes All the Requirements of Rule 23(c)(2)(B) and Comports With Due Process

The proposed Class Notice more than satisfies each of the requirements of Rule 23(c)(2)(B) because it includes, among other things: (i) a description of the action, (Burns Decl. Ex. 1–E at 1–2; (ii) a definition of the class, (*id*. at 1, 4; (iii) a description of the class claims, issues and defenses, (*id*. at 4); (iv) a statement that a Class member may enter an appearance through an attorney if the member so desires, (*id*. at 11); (v) a statement that the Court will exclude from the class any member who requests exclusion, (*id*. at 14); (vi) the time and manner for requesting exclusion, (*id*.); and (vii) a statement concerning the binding effect of a class judgment on class members, (*id*. at 7). *Compare* Burns Decl. Ex. 1–E *with* FED. R. CIV. P. 23(c)(2)(B).

The Class Notice also comports with Due Process. It is well organized, written in plain concise language such that it could easily be understood by the average member of the Class and it fairly apprises the Class of the existence of the Settlement, their options under the Settlement, the material terms of the Settlement and how they may obtain a copy of same. *See Wal-Mart*, 396 F.3d at 114–155.

### 3.    The Proposed Notice Plan is the Best Practicable Under the Circumstances

As set forth below, Plaintiffs propose essentially the same multi-pronged program of notice that has been repeatedly approved in prior CEA manipulation class action settlements, *In re Amaranth Natural Gas Commodities Litig.*, 07-cv-6377 (SAS), (S.D.N.Y. Jan. 13, 2012), ECF No. 376 at ¶¶ 7-10; *Hershey, et al., v. Pacific Investment Management Company LLC, et al.*, 05-cv-04681 (RAG), (N.D. Ill. Jan. 26, 2011), Docket No. 562 at ¶¶ 2-4, EXCEPT that this notice **also** includes publication in The Wall Street Journal.

### a.    Direct Mail Notice To All Large Traders and Clearing Members

*First*, Plaintiffs propose to send individual mail notice to all large traders[8] in NYMEX and ICE WTI crude oil futures and options contracts. Plaintiffs anticipate receiving the names (and, if available, last known addresses) of all large traders from NYMEX and ICE pursuant to subpoena. According to reports issued by the CFTC (specifically the Commitments of Traders Reports), large traders accounted for **more than 90%** of the total long and short sides of the NYMEX WTI crude oil futures contract market during the January through May 15, 2008 Class Period.[9]

*Second*, everyone who transacted in NYMEX or ICE WTI futures contracts had to do so through a clearing member. Plaintiffs anticipate receiving the names (and, if available, last known addresses) of all relevant clearing members from NYMEX and ICE pursuant to subpoena. The first page of the Class Notice requests that NYMEX and ICE clearing firms forward the Class Notice to their customers who transacted in NYMEX or ICE WTI crude oil futures contracts during the Class Period within two weeks of receiving such notice (or provide the names and addresses of such customers to the Settlement Administrator). Burns Decl. at ¶¶37–41. This should effect mail notice to all Class Members, and provide overlapping notice to the Class members who had the largest positions in NYMEX and ICE WTI crude oil futures contracts and options. Plaintiffs also intend to send direct mail notice of the Settlement to any reasonable identifiable members of the Class.

b. **Notice by Publication in Multiple Futures Industry Publications and The Wall Street Journal**

---

[8] A large trader is one who holds or controls a position in any one future or in any one option expiration series of a commodity on any one exchange equaling or exceeding the exchange or CFTC-specified reporting level. The large trader reporting threshold for NYMEX WTI crude oil futures contracts is 350 contracts.

[9] *See* CFTC Commitment of Traders Report, available at
http://www.cftc.gov/MarketReports/CommitmentsofTraders/HistoricalCompressed/index.htm.

*Third*, Plaintiffs propose substantial notice by publication as follows: (a) for two consecutive months in Futures Magazine (which reportedly has 37,877 subscribers and many additional readers who trade commodity futures); (b) on the Futures Magazine website (which reportedly has 86,600 unique visits per month) for one month; (c) for two consecutive months in Stocks and Commodities Magazine (which reportedly has approximately 54,540 subscribers); (d) on the Stocks and Commodities Magazine website for one month (which reportedly has approximately 100,000 unique visits per month); and (e) in one edition of The Wall Street Journal (which reportedly has a daily average circulation of 1,443,480).  Any members of the Class that do not receive notice through direct mail are likely to receive notice through the foregoing publications or through word of mouth.

### c.   Creation of Settlement Website Searchable On The Internet

*Fourth*, Plaintiffs propose to provide notice through the creation of the website. This website will allow Settlement Class Members who search the web to learn of the action, obtain their proof of claim and learn of other pertinent matters (including the date of the Fairness Hearing). The Class Notice and publication notice will reference the settlement website, which will provide access to certain important information, such as the Settlement Agreement.

****

The above four-pronged program of notice is reasonably calculated to have the potential to reach all Class members and to reach **more than once** the largest traders in NYMEX and ICE WTI crude oil futures contracts during the Class Period.  Accordingly, the proposed notice plan meets each of the requirements under Rule 23(c)(2)(B), comports with  due process and is the best notice practicable under the circumstances.

20

C.    **The Settlement Class Should be Certified for Settlement Purposes Because it Satisfies the Four Requirements of Rule 23(a) and the Two Prongs of Rule 23(b)(3)**

Rule 23(e) allows for settlement "of a certified class."  *See* FED. R. CIV. P. 23(e); *see also In re Global Crossing Securities* 225 F.R.D. at 451 ("The Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes.").  A court may grant certification for settlement purposes where the proposed settlement class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).

CEA manipulation claim classes have repeatedly been upheld by the Second Circuit.[10]  As demonstrated below, the Settlement Class meets all the requirements of Rule 23(a) as well as the two prongs of Rule 23(b)(3).

1.    **The Settlement Class Satisfies the Four Requirements of Rule 23(a)**

Rule 23(a) permits an action to be maintained as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

a.    **Rule 23(a)(1)—The Members of the Settlement Class are so Numerous that Joinder of All Members is Impracticable**

Rule 23(a)(1)'s numerosity requirement does not mean that joinder must be impossible, but rather "merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims."  *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 90

---

[10]  *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366 (S.D.N.Y. 2010), *petition for review denied*, No. 10-4110-(2d Cir. Dec. 28, 2010); *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 186 (S.D.N.Y. 2005), *petition for review denied*, No. 05-5732 (2d Cir. Aug. 30, 2006); *In re Sumitomo Copper Litig.*, 194 F.R.D. 480 (S.D.N.Y. 2000), appeal denied, 262 F.3d 134 (2d Cir. 2001).

(S.D.N.Y. 2009) ("*IPO*").  In fact, numerosity can be presumed at a level of forty class members or more.  *Id*.

Here, the Settlement Class consists of all persons or entities that purchased, sold or otherwise traded NYMEX WTI futures contracts January 1, 2008 through May 15, 2008, inclusive.  Documents produced by the NYMEX reflect that there were, at least, hundreds of traders.  Clearly, joinder of the numerous and geographically dispersed members of the Settlement Class is impracticable. Thus, Rule 23(a)(1) is satisfied.

> **b.   Rule 23(a)(2)—There Are Numerous Questions of Law and Fact Common To The  Settlement Class**

Rule 23(a)(2) commonality requires that common issues of fact or law affect all class members.  *IPO*, 260 F.R.D. at 91. Common issues include, among others:

1.   whether Defendants manipulated Class Contracts in violation of the CEA;

2.   whether such manipulation caused Class Contracts to be artificial;

3.   whether such manipulation caused cognizable legal injury under the CEA;

4.   whether such injury or the extent of such artificiality may be established by common, class-wide means, including, for example, by regression analysis, econometric formula, or other economic tests.

Plaintiffs' overarching allegation is that Defendants manipulated the prices of Class Contracts causing artificial prices, which affected all members of the Settlement Class in the same manner.  The proof required to establish Defendants' alleged unlawful conduct is common to all members of the Settlement Class. Thus, Rule 23(a)(2) is satisfied.

> **c.   Rule 23(a)(3) —The Claims and Defenses of the Settlement Class Representatives are Typical of the Claims and Defenses of the Settlement Class**

Typicality may be satisfied under Rule 23(a)(3) where "injuries derive from a unitary course of conduct by a single system." *IPO*, 260 F.R.D. at 91.  The injuries of the proposed

Settlement Class representatives are typical of the injuries of the members of the Settlement Class because they arise from the same unitary course of Defendants' alleged manipulative conduct with respect to Class Contracts. Thus, Rule 23(a)(3) is satisfied.

### d.  <u>Rule 23(a)(4)</u> —The Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Generally, courts will consider "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id*. at 61.

First, the proposed Settlement Class representatives transacted in Class Contracts and were thereby impacted by Defendants' conduct. The same is true of all members of the Settlement Class. Thus, the proposed Settlement Class representatives' interests in proving liability and damages are entirely aligned with that of members of the Settlement Class. Second, the proposed Settlement Class representatives are represented by experienced counsel thoroughly familiar with complex class action and commodities litigation. *See*, *e.g.*, *In re Natural Gas Commodities Litig*, 231 F.R.D. 171 (S.D.N.Y. 2005) (certifying class alleging commodities manipulation and appointing lawyers from same three firms co-lead counsel). Thus, Rule 23(a)(4) is satisfied.

### 2.  The Settlement Class Satisfies The Two Prongs of Rule 23(b)(3)

In addition to establishing that the proposed Settlement Class satisfies Rule 23(a)'s requirements, Plaintiffs must also show that one of three alternative categories under Rule 23(b) has been established. *IPO*, 260 F.R.D. at 92. Plaintiffs move pursuant to Rule 23(b)(3) and therefore must establish (1) "that the questions of law or fact common to class members

predominate over any questions affecting only individual members . . ." and (2) "…that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### a.    Common Questions of Law and Fact Predominate

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, Plaintiffs allege that Defendants manipulated the prices of Class Contracts causing artificial prices that affected all members of the Settlement Class. Thus, issues common to the members of the Settlement Class predominate over any individual questions.

### b.    A Class Action is the Superior Method To Adjudicate These Claims

Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." *See* FED. R. CIV. P. 23(b)(3)(A)–(D) (listing four non-exhaustive factors to consider).

The damages suffered by many of the individual members of the Settlement Class are likely to be relatively small such that the expense and burden of individual litigation make it virtually impossible for them to protect their rights. Moreover, the prosecution of separate actions by hundreds of individual members of the Settlement Class would impose heavy burdens upon the Court and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class. For these and other reasons, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Thus, both prongs of Rule 23(b)(3) are satisfied.

**D.    The Court Should Appoint Lovell Stewart and Burns Charest to Act as Lead Counsel for the Settlement Class**

Federal Rule of Civil Procedure 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Rule 23(g)(2) provides that where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2).

The Court previously appointed Lovell Stewart and Susman Godfrey LLP ("Susman Godfrey") as Interim Lead Counsel in this Action. *See* ECF No. 42. Burns Charest LLP has previously moved to substitute for Susman Godfrey LLP, and no objections have been lodged. For all the same reasons the Court appointed Lovell Stewart and Susman Godfrey as Interim Lead Counsel, the Court should now appoint Lovell Stewart and Burns Charest as class counsel for the Settlement Class.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement Agreement and enter the Scheduling Order attached as Exhibit 1–D to the Declaration of Warren Burns, Esq.

Dated: June 3, 2015                **LOVELL STEWART HALEBIAN JACOBSON LLP**

/s/ Christopher Lovell_____
By: Christopher Lovell, Esq.
Ian T. Stoll, Esq.
61 Broadway, Suite 501
New York, New York 10006
212-608-1900

/s/ Warren T. Burns_____
**BURNS CHAREST LLP**
500 North Akard, Suite 2810
Dallas, Texas 75201
(469) 904-4550
*Co-Lead Counsel*